DEWAYNE BOND AND KAREN R. BOND, PETITIONERS
*v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

Docket No. 24969–90.        Filed January 19, 1993.

*Patricia Tucker,* for petitioners.
*Thomas F. Eagan,* for respondent.

SHIELDS, *Judge:* This matter is before the Court at this time on a motion by each party for summary judgment under Rule 121.[1]

For 1986 respondent determined a deficiency in petitioners' income tax in the amount of $29,400 and an addition to tax under section 6659 for a valuation overstatement in the amount of $8,820. However, the parties have stipulated that there was no valuation overstatement on petitioners' return for 1986. They have also stipulated that the only issue is whether, as a matter of law, the charitable contribution deduction claimed by petitioners for the value of two thermal airships donated by them in 1986 to a foundation organized and operated in conformance with section 170(c)(2) must be disallowed because petitioners failed to obtain and attach to their income tax return for 1986 a qualified appraisal of the donated property as described in section 155(a)(1)(A) of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 691, and section 1.170A-13(c)(2)(i)(A) and (3), Income Tax Regs.

### FINDINGS OF FACT

At the time they filed their petition in this case petitioners resided in Albuquerque, New Mexico. On December 12, 1986, they donated two thermal airships (blimps) to the Maxie L. Anderson Foundation, an organization exempt from tax under section 501(c)(3) and described in section 170(c)(2). In December of 1986, Sid Cutter, at the request of petitioners, made an appraisal of the airships for the purpose of determining their value, for use by petitioners in the preparation of their income tax return for 1986. Mr. Cutter was familiar with and knowledgeable of airships. In performing the appraisal, Mr. Cutter personally inspected the airships, computed the value of their component parts, and concluded that the total aggregate fair market value for the parts was $60,000. In arriving at his appraisal, Mr. Cutter made writ-

---

[1] All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the year in issue, unless otherwise indicated.

ten computations, schedules, and notes, but was unable to locate them at the time of trial.

Prior to April 15, 1987, the due date of petitioners' income tax return for 1986, Mr. Cutter completed parts II and IV of the appraisal summary contained in section B of respondent's Form 8283, entitled Noncash Charitable Contributions. In part II of the Form 8283, entitled Information on Donated Property, Mr. Cutter: (1) Described the donated property as thermal airships; (2) stated their appraisal fair market value was $60,000; and (3) summarized their overall physical condition as "2 thermal airships (blimps) in airworthy condition save required FAA annual inspections and fuel tanks."

In part IV of the form, entitled Certification of Appraiser, Mr. Cutter attested that he was not the donor, the donee, a party to the transaction in which the donor acquired the property, employed by or related to the donor or donee, nor a person whose relationship to either the donor or donee would cause a reasonable person to question his independence as an appraiser. In the same certification, Mr. Cutter also attested that he held himself out to the public as an appraiser, that he was qualified to make appraisals of the type of property being valued, that the appraisal fees were not based upon a percentage of the appraised property value, and that a false or fraudulent overstatement of the property value might subject him to a civil penalty under section 6701(a).

Mr. Cutter signed the Form 8283 on January 8, 1987, and indicated therein that he was the president of World Balloon Corp., that the corporation was located at 4800 Eubank, N.E., in Albuquerque, New Mexico 87111, and that the corporation had been assigned identification number 85-0220353 by respondent. No separate written appraisal of the two airships, other than that set forth on the Form 8283, was prepared by Mr. Cutter or received by petitioners before the due date for filing their 1986 return.

On their timely filed income tax return for 1986 petitioners claimed a charitable deduction in the amount of $60,000 with respect to the airships. In support of the deduction petitioners attached to their return the Form 8283 which was prepared by Mr. Cutter in the manner described above.

Petitioners' 1986 return was audited by respondent. Shortly after the audit commenced Mr. Cutter furnished

respondent's agent with a letter dated September 21, 1989, which contains the following statements concerning his qualifications and appraisal of the airships.

My qualifications as an appraiser include my years of experience in aviation, and my involvement in the construction of these particular airships. The construction of the airships was based on the principles of aviation and hot air ballooning. I had built three prototype hot air balloons before building these airships.

I received my initial experience, working for my father at Cutter Flying Service. I received a private pilot license at age 17, a commercial pilot license at 18, and flying instructor certification at 21. I joined the Air Force at 23, and flew jets and heavy transports. I went to work for Cutter Flying Service on a regular basis in 1952, was president from 1963-1974, and from 1974 to the present have served as vice president and director. Cutter Flying Service is involved in charter, sales and service, and is an FAA certified repair station. I, personally, am a certified repairman and am experienced in rebuilding airplanes and balloons. I have approximately 22,000 hours flying time of which 1,200 hours is in helicopters and 4,000+ in balloons. I have been involved in hot air ballooning since 1971.

I am currently president of World Balloon Corporation, which, in addition to offering recreational opportunities to the public, is involved in sales, service, pilot services and pilot training. The Corporation has an FAA Part 141 flight school and an FAA certified repair station. I organized the first two World Hot Air Balloon Championships and the first five Albuquerque International Balloon Fiestas.

I have been a member of the Balloon Federation of America, National Aviation Trades Association, National Aeronautics Association, and the Aircraft Owners and Pilots Association. I have been on the board of directors of the Air Taxi Conference and was an officer of the Balloon Federation of America. I have attended all the major balloon manufacturers maintenance training schools have been a FAA Designated Balloon Pilot Examiner since 1979 and have been a FAA Designated Balloon Pilot Examiner since 1979.

The method that I used to value the two thermal airships that the Bonds donated to the Maxie L. Anderson Foundation was what I refer to as "salvage value", or what the individual components of the airships were worth. The engine packages were modified helicopter engines.

I estimate that resale value in 1986 was $150,000 and replacement value approximately $500,000. Because the airships are among the largest in the world, they have obvious historical value, but it would be difficult for me to judge that value.

In the deficiency notice respondent determined that the contribution deduction claimed by petitioners was not allowable "because it has not been established that the thermal airships had a fair market value" or "that all the items sup-

posedly donated were in fact donated." However, in respondent's answer, motion for summary judgment, and memorandum of law in support of the motion, respondent abandons the above contentions and merely asserts that the deduction is not allowable because petitioners did not obtain and attach to their return a qualified appraisal of the airships as required by the Deficit Reduction Act of 1984 and the applicable regulation.

OPINION

Summary judgment is appropriate in any case before us "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b); *Naftel v. Commissioner,* 85 T.C. 527, 529 (1985). The nonmoving party cannot rest upon the allegations or denials in his pleading, but must "set forth specific facts showing that there is a genuine issue for trial." Rule 121(d); *Dahlstrom v. Commissioner,* 85 T.C. 812, 820-821 (1985). The moving party, however, has the burden of proving that no genuine issue exists as to any material fact and that he is entitled to judgment on the substantive issues as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Espinoza v. Commissioner,* 78 T.C. 412, 416 (1982). In deciding whether to grant summary judgment, we view the factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Naftel v. Commissioner, supra* at 529. If there exists any reasonable doubt as to the facts at issue, the motion must be denied. *Espinoza v. Commissioner, supra* at 416.

Since the facts set forth in our findings are not in dispute it is apparent that summary judgment is appropriate in this case. Consequently, the only question remaining is which motion should be granted.

Section 155 of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 691, reads in pertinent part as follows:

SEC. 155(a). SUBSTANTIATION OF CONTRIBUTIONS OF PROPERTY.—

(1) IN GENERAL.—Not later than December 31, 1984, the Secretary shall prescribe regulations under section 170(a)(1) of the Internal Revenue Code

of 1954, which require any individual * * * claiming a deduction under section 170 of such Code for a contribution described in paragraph (2)—
   (A) to obtain a qualified appraisal for the property contributed,
   (B) to attach an appraisal summary to the return on which such deduction is first claimed for such contribution, and
   (C) to include on such return such additional information (including the cost basis and acquisition date of the contributed property) as the Secretary may prescribe in such regulations.
Such regulations shall require the taxpayer to retain any qualified appraisal.
   (2) CONTRIBUTIONS TO WHICH PARAGRAPH (1) APPLIES.—For purposes of paragraph (1), a contribution is described in this paragraph—
   (A) if such contribution is of property * * * and
   (B) if the claimed value of such property * * * exceeds $5,000.

          *     *     *     *     *     *     *

   (3) APPRAISAL SUMMARY.—For purposes of this subsection, the appraisal summary shall be in such form and include such information as the Secretary prescribes by regulations. Such summary shall be signed by the qualified appraiser preparing the qualified appraisal and shall contain the TIN of such appraiser. Such summary shall be acknowledged by the donee of the property appraised in such manner as the Secretary prescribes in such regulations.
   (4) QUALIFIED APPRAISAL.—The term "qualified appraisal" means an appraisal prepared by a qualified appraiser which includes—
   (A) a description of the property appraised,
   (B) the fair market value of such property on the date of contribution and the specific basis for the valuation,
   (C) a statement that such appraisal was prepared for income tax purposes,
   (D) the qualifications of the qualified appraiser,
   (E) the signature and TIN of such appraiser, and
   (F) such additional information as the Secretary prescribes in such regulations.

   Pursuant to the above provision in the Deficit Reduction Act respondent issued on December 31, 1984, temporary regulations. See sec. 1.170A-13T, Temporary Income Tax Regs., 49 Fed. Reg. 50657 (Dec. 31, 1984). On May 5, 1988, respondent issued final regulations which in pertinent part are the same as the temporary regulations. See sec. 1.170A-13, Income Tax Regs. As applicable here section 1.170A-13 of the final regulations is as follows:

   (c)(2) *Substantiation requirements*—(i) *In general.* Except as provided in paragraph (c)(2)(ii) of this section, a donor who claims or reports a deduction with respect to a charitable contribution to which this paragraph (c) applies must comply with the following three requirements:

(A) Obtain a qualified appraisal (as defined in paragraph (c)(3) of this section) for such property contributed. * * *

(B) Attach a fully completed appraisal summary (as defined in paragraph (c)(4) of this section) to the tax return * * * on which the deduction for the contribution is first claimed (or reported) by the donor.

\* \* \* \* \* \* \*

(3) *Qualified appraisal*—(i) *In general.* For purposes of this paragraph (c), the term "qualified appraisal" means an appraisal document that—

(A) Relates to an appraisal that is made not earlier than 60 days prior to the date of contribution of the appraised property nor later than the date specified in paragraph (c)(3)(iv)(B) of this section;

(B) Is prepared, signed, and dated by a qualified appraiser (within the meaning of paragraph (c)(5) of this section);

(C) Includes the information required by paragraph (c)(3)(ii) of this section; and

(D) Does not involve an appraisal fee prohibited by paragraph (c)(6) of this section.

(ii) *Information included in qualified appraisal.* A qualified appraisal shall include the following information:

(A) A description of the property in sufficient detail for a person who is not generally familiar with the type of property to ascertain that the property that was appraised is the property that was (or will be) contributed;

(B) In the case of tangible property, the physical condition of the property;

(C) The date (or expected date) of contribution to the donee;

(D) The terms of any agreement or understanding entered into (or expected to be entered into) by or on behalf of the donor or donee that relates to the use, sale, or other disposition of the property contributed, including, for example, the terms of any agreement or understanding that—

(1) Restricts temporarily or permanently a donee's right to use or dispose of the donated property,

(2) Reserves to, or confers upon, anyone (other than a donee organization or an organization participating with a donee organization in cooperative fund-raising) any right to the income from the contributed property or to the possession of the property, including the right to vote donated securities, to acquire the property by purchase or otherwise, or to designate the person having such income, possession, or right to acquire, or

(3) Earmarks donated property for a particular use;

(E) The name, address, and * * * the identifying number of the qualified appraiser; and, if the qualified appraiser is acting in his or her capacity as a partner in a partnership, an employee of any person (whether an individual, corporation, or partnerships), or an independent contractor engaged by a person other than the donor, the name, address, and taxpayer identification number (if a number is otherwise required by section 6109 and the regulations thereunder) of the partnership or the person who employs or engages the qualified appraiser;

(F) The qualifications of the qualified appraiser who signs the appraisal, including the appraiser's background, experience, education, and membership, if any, in professional appraisal associations;

(G) A statement that the appraisal was prepared for income tax purposes;

(H) The date (or dates) on which the property was appraised;

(I) The appraised fair market value (within the meaning of section 1.170A-1(c)(2) of the property on the date (or expected date) of contribution;

(J) The method of valuation used to determine the fair market value, such as the income approach, the market-date approach, and the replacement-cost-less-depreciation approach; and

(K) The specific basis for the valuation, such as specific comparable sales transactions or statistical sampling, including a justification for using sampling and an explanation of the sampling procedure employed.

\* \* \* \* \* \* \*

(iv) *Special rules*—

\* \* \* \* \* \* \*

(B) *Time of receipt of qualified appraisal.* The qualified appraisal must be received by the donor before the due date (including extensions) of the return on which a deduction is first claimed (or reported in the case of a donor that is a partnership or S corporation) under section 170 with respect to the donated property, or, in the case of a deduction first claimed (or reported) on an amended return, the date on which the return is filed.

\* \* \* \* \* \* \*

(4) *Appraisal summary*—(i) *In general.* For purposes of this paragraph (c), except as provided in paragraph (c)(4)(iv)(A) of this section, the term "appraisal summary" means a summary of a qualified appraisal that—

(A) Is made on the form prescribed by the Internal Revenue Service [Form 8283];

(B) Is signed and dated (as described in paragraph (c)(4)(iii) of this section) by the donee (or presented to the donee for signature in cases described in paragraph (c)(4)(iv)(C)(2) of this section);

(C) Is signed and dated by the qualified appraiser (within the meaning of paragraph (c)(5) of this section) who prepared the qualified appraisal (within the meaning of paragraph (c)(3) of this section); and

(D) Includes the information required by paragraph (c)(4)(ii) of this section.

(ii) *Information included in an appraisal summary.* An appraisal summary shall include the following information:

(A) The name and taxpayer identification number of the donor (social security number if the donor is an individual or employer identification number if the donor is a partnership or corporation);

(B) A description of the property in sufficient detail for a person who is not generally familiar with the type of property to ascertain that the property that was appraised is the property that was contributed;

(C) In the case of tangible property, a brief summary of the overall physical condition of the property at the time of the contribution;

(D) The manner of acquisition (e.g., purchase, exchange, gift, or bequest) and the date of acquisition of the property by the donor, or, if the property was created, produced, or manufactured by or for the donor, a statement to that effect and the approximate date the property was substantially completed;

(E) The cost or other basis of the property adjusted as provided by section 1016;

(F) The name, address, and taxpayer identification number of the donee;

(G) The date the donee received the property;

(H) For charitable contributions made after June 6, 1988, a statement explaining whether or not the charitable contribution was made by means of a bargain sale and the amount of any consideration received from the donee for the contribution;

(I) The name, address, and (if a taxpayer identification number is otherwise required by section 6109 and the regulations thereunder) the identifying number of the qualified appraiser who signs the appraisal summary and of other persons as required by paragraph (c)(3)(ii)(E) of this section;

(J) The appraised fair market value of the property on the date of contribution;

(K) The declaration by the appraiser described in paragraph (c)(5)(i) of this section;

(L) A declaration by the appraiser stating that—

(1) The fee charged for the appraisal is not of a type prohibited by paragraph (c)(6) of this section; and

(2) Appraisals prepared by the appraiser are not being disregarded pursuant to 31 U.S.C. 330(c) on the date the appraisal summary is signed by the appraiser; and

(M) Such other information as may be specified by the form.

(iii) *Signature of the original donee.* The person who signs the appraisal summary for the donee shall be an official authorized to sign the tax or information returns of the donee, or a person specifically authorized to sign appraisal summaries by an official authorized to sign the tax or information returns of such donee. * * *

Respondent contends that by not obtaining and attaching to their 1986 income tax return a written appraisal of the airships, petitioners have failed to satisfy the prerequisites to a charitable deduction under section 1.170A-13(c)(2)(i)(A) and (3), Income Tax Regs. On the other hand, petitioners contend that they substantially complied with the requirements of the applicable statute and, therefore, have qualified for the charitable deduction under the doctrine of substantial compliance the test for which is set forth in *Taylor v. Commissioner,* 67 T.C. 1071, 1077-1078 (1977), as follows:

The critical question to be answered is whether the requirements relate "to the substance or essence of the statute." *Fred J. Sperapani,* 42 T.C. 308, 331 (1964). If so, strict adherence to all statutory and regulatory requirements is a precondition to an effective election. *Lee R. Dunavant,* 63 T.C. 316 (1974). On the other hand, if the requirements are procedural or directory in that they are not of the essence of the thing to be done but are given with a view to the orderly conduct of business, they may be fulfilled by substantial, if not strict compliance. See *Lee R. Dunavant, supra; Georgie S. Cary,* 41 T.C. 214 (1963); *Columbia Iron & Metal Co.,* 61 T.C. 5 (1973). * * *

Under the above test we must examine section 170 to determine whether the requirements of the regulations are mandatory or directory with respect to its statutory purpose. At the outset, it is apparent that the essence of section 170 is to allow certain taxpayers a charitable deduction for contributions made to certain organizations. It is equally apparent that the reporting requirements of section 1.170A-13, Income Tax Regs., are helpful to respondent in the processing and auditing of returns on which charitable deductions are claimed. However, the reporting requirements do not relate to the substance or essence of whether or not a charitable contribution was actually made. We conclude, therefore, that the reporting requirements are directory and not mandatory. See *Taylor v. Commissioner, supra* at 1078-1079.

Furthermore, our conclusion is not altered by the fact that section 170(a) states that "A charitable contribution shall be allowed as a deduction only if verified under regulations prescribed by the Secretary." See *Cary v. Commissioner,* 41 T.C. 214 (1963), where we held that a similar provision in section 302(c)(2)(A)(iii), requiring the filing of an agreement to notify the Commissioner of reacquisitions of stock within a 10-year period of a redemption under section 302(b)(3) in the manner prescribed by an applicable regulation, is directory rather than mandatory. The fact that a Code provision conditions the entitlement of a tax benefit upon compliance with respondent's regulation does not mean that literal as opposed to substantial compliance is mandated. *Cary v. Commissioner, supra.*

In the case before us there is no question that a donation of the two airships was made during the taxable year, that the subject of the donation was appraised at the amount claimed by petitioners as a charitable deduction during the taxable year by a qualified appraiser, and that the donee was

qualified to receive a charitable contribution. In fact, with the exception of the excellent qualifications of the appraiser all of these facts appeared on the Form 8283 attached to the return filed by petitioners. Furthermore, the name, title, and place of employment of the appraiser also appeared on the Form 8283 together with the identification number assigned to his employer by respondent. The appraiser's qualifications were promptly furnished to respondent's agent at or near the commencement of his audit. Therefore, this is not a case where petitioners failed to obtain a timely appraisal of the donated property and thereby failed to establish its value for claiming a contribution deduction on their return. Instead, petitioners, in this case, met all of the elements required to establish the substance or essence of a charitable contribution, but merely failed to obtain and attach to their return a separate written appraisal containing the information specified in respondent's regulations even though substantially all of the specified information except the qualifications of the appraiser appeared in the Form 8283 attached to the return. The denial of a charitable deduction under these circumstances would constitute a sanction which is not warranted or justified. See *Columbia Iron & Metal Co. v. Commissioner,* 61 T.C. 5, 10 (1973).

We conclude, therefore, that petitioners have substantially complied with section 1.170A-13, Income Tax Regs., and are entitled to the charitable deduction claimed.

> *An order denying respondent's motion and granting petitioners' motion and decision for petitioners will be entered.*