ROGER B. FAIR AND GAIL K. FAIR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fair v. Commissioner
Docket No. 9400-91
United States Tax Court
T.C. Memo 1993-377; 1993 Tax Ct. Memo LEXIS 397; 66 T.C.M. (CCH) 460; August 23, 1993, Filed *397 Decision will be entered under Rule 155. For petitioners: Robert J. Alter and Richard J. Sapinski. For respondent: William F. Halley. COLVIN
COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: Respondent determined the following deficiencies and additions to Federal income tax for petitioners: Additions To Tax Sec. Sec.
Sec. Year
Deficiency
6653(a)(1) [1]
6653(a)(2)
6661(a)
1984 $ 37,900 $ 1,895
[2] $ 9,475
1985
38,003
1,900
[2]
9,501
1986
33,007
1,654
[2]
8,269
1987
13,019
651
[2]
3,255
By bench opinion, we decided the fair market value of a 45-foot flybridge trawler (My Fair Lady II) transferred by bargain sale in 1984 by petitioners to Associated Marine Institutes, Inc. After concessions and the bench opinion, the sole issue is whether petitioners' deduction for the bargain sale of My Fair Lady II in 1984 (and carryovers to 1985, 1986, and 1987) should be disallowed for failure to meet the substantiation requirements *398 of section 1.170A-13(b)(3), Income Tax Regs. We hold that it should not. References to petitioner are to Roger Fair. Section references are to the Internal Revenue Code in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT 1. Petitioners
Petitioners were married and lived in New Jersey when they filed their petition. Petitioner was educated as a mechanical engineer and was an executive with the Accurate Screw Machine Co. during the years in issue. Petitioner wife was a teacher. 2. Petitioner's Acquisition of My Fair Lady II
During the late 1970s, petitioner hired the Baldwinsville Boatyard (Baldwinsville) and its owner, David Lower (Lower), to design and construct the My Fair Lady II, a 45-foot custom flybridge steel fishing trawler. The keel of the trawler was laid in February 1979. Construction of the vessel took about 1 year during which Baldwinsville built the decks, superstructure, and flybridge. Petitioner paid Baldwinsville $ 64,299.86 for the boat. Baldwinsville also installed the engines, controls, generator, and other items which petitioner bought separately. Petitioner does *399 not have records of the cost of most of these items. Petitioner had records establishing a basis of at least $ 68,846.64 for the boat and the components he purchased and Baldwinsville installed. 3. Petitioner's Bargain Sale of My Fair Lady II to AMI
On July 12, 1984, petitioner sold My Fair Lady II to Associated Marine Institutes, Inc. (AMI), of Tampa, Florida, for $ 25,000. AMI is a section 501(c)(3) organization to which contributions are tax deductible. AMI used My Fair Lady II from July 1984 to August 1987 in its programs designed to teach delinquent youths individual responsibility by going on sea cruises. AMI's use of My Fair Lady II was related to its exempt purpose. On the advice of a broker at Erwin's Yacht Brokers, Ft. Lauderdale, Florida, petitioner commissioned surveys to establish the fair market value of My Fair Lady II before donating it to AMI. The appraisals were performed by marine surveyors who were unrelated to petitioners, Captain Higginson and Gerald Slakoff. Higginson valued the boat at $ 199,000 and Slakoff valued it at $ 190,000. Petitioner attached the Higginson and Slakoff appraisals to his 1984 return. Respondent conceded at trial that *400 Slakoff was an expert in the valuation of similar vessels. At trial, we found that the fair market value of My Fair Lady II was $ 160,000 when it was donated to AMI. Petitioners' 1984 and 1985 individual and business returns were prepared by Alex Zalin (Zalin), a certified public accountant. Petitioner relied on Zalin's advice in determining what information to include with petitioners' 1984 return regarding the contribution of My Fair Lady II. Petitioner did not keep some records because neither Zalin nor anyone else ever told him that he needed to include with his return or maintain information about the cost basis of My Fair Lady II to obtain a charitable deduction for contributing to AMI. Petitioner had more records in 1984 and 1985 of his basis in My Fair Lady II than he did at the time of trial because he was divorced twice and sold his business in the interim. Petitioners attached the following to their 1984 return: appraisals of the boat from two qualified appraisers; a copy of the bargain sale agreement; a statement that the donee was a section 501(c)(3) exempt organization qualified to receive the charitable contribution; a deed of gift to the donee; and a copy of *401 an acknowledgement letter from the donee. Petitioners claimed a $ 169,000 charitable deduction on their 1984 return for their donation of My Fair Lady II to AMI. Petitioners carried part of the deduction to their 1985, 1986, and 1987 returns because the deduction exceeded the limitation of section 170(b)(1)(B). Respondent concedes that petitioner donated My Fair Lady II to AMI more than 5 years after petitioner acquired ownership of the boat. OPINION A taxpayer may deduct charitable contributions if, among other requirements, the contribution is verified under regulations prescribed by the Secretary. Sec. 170(a)(1). Respondent contends that petitioners have failed to satisfy the substantiation requirements of section 1.170A-13(b)(3), Income Tax Regs., because they did not maintain written records of the cost basis of My Fair Lady II. Respondent argues that these regulations are entitled to a high degree of deference because they are legislative in nature, Anderson, Clayton & Co. v. United States, 562 F.2d 972, 976 (5th Cir. 1977), and that section 1.170A-13(b)(3), Income Tax Regs., requires that the taxpayer maintain cost basis records. Section *402 1.170A-13(b)(3), Income Tax Regs., applicable for taxable years beginning after December 31, 1982, provides as follows: (3) Deductions in excess of $ 500 claimed for a charitable contribution of property other than money -- (i) In general. In addition to the information required under paragraph (b)(2)(ii) of this section, if a taxpayer makes a charitable contribution of property other than money in a taxable year beginning after December 31, 1982, and claims a deduction in excess of $ 500 in respect of the contribution of such item, the taxpayer shall maintain written records that include the following information with respect to such item of donated property, and shall state such information in his or her income tax return if required by the return form or its instructions: (A) The manner of acquisition, as, for example by purchase, gift, bequest, inheritance, or exchange, and the approximate date of acquisition of the property by the taxpayer or, if the property was created, produced, or manufactured by or for the taxpayer, the approximate date the property was substantially completed. (B) The cost or other basis, adjusted as provided by section 1016, of property, *403 other than publicly traded securities, held by the taxpayer for a period of less than 12 months (6 months for property contributed in taxable years beginning after December 31, 1982, and on or before June 6, 1988) immediately preceding the date on which the contribution was made and, when the information is available, of property, other than publicly traded securities, held for a period of 12 months or more (6 months or more for property contributed in taxable years beginning after December 31, 1982, and on or before June 6, 1988) preceding the date on which the contribution was made. (ii) Information on acquisition date or cost basis not available. If the return form or its instructions require the taxpayer to provide information on either the acquisition date of the property or the cost basis as described in paragraph (b)(3)(i)(A) and (B), respectively, of this section, and the taxpayer has reasonable cause for not being able to provide such information, the taxpayer shall attach an explanatory statement to the return. If a taxpayer has reasonable cause for not being able to provide such information, the taxpayer shall not be disallowed a charitable contribution deduction *404 under section 170 for failure to comply with paragraph (b)(3)(i)(A) and (B) of the section.
Section 1.170A-13(b)(3)(i)(B), Income Tax Regs., requires, for assets held more than 6 months, that the taxpayer maintain written records of cost basis when the information is available. Respondent contends that when petitioner donated the trawler in July 1984, information about all of the costs of the trawler was available to petitioner. Petitioner does not dispute respondent's contention, but argues that he substantially complied with the regulations in filing his 1984 return. In Bond v. Commissioner, 100 T.C. 32 (1993), we considered whether section 1.170A-13, Income Tax Regs., is mandatory or directory with respect to its statutory purpose. We said: At the outset, it is apparent that the essence of section 170 is to allow certain taxpayers a charitable deduction for contributions made to certain organizations. It is equally apparent that the reporting requirements of section 1.170A-13, Income Tax Regs., are helpful to respondent in the processing and auditing of returns on which charitable deductions are claimed. However, the reporting requirements *405 do not relate to the substance or essence of whether or not a charitable contribution was actually made. We conclude, therefore, that the reporting requirements are directory and not mandatory. See Taylor v. Commissioner, supra at 1078-1079. Furthermore, our conclusion is not altered by the fact that section 170(a) states that "A charitable contribution shall be allowed as a deduction only if verified under regulations prescribed by the Secretary." See Cary v. Commissioner, 41 T.C. 214 (1963), where we held that a similar provision in section 302(c)(2)(A)(iii), requiring the filing of an agreement to notify the Commissioner of reacquisitions of stock within a 10-year period of a redemption under section 302(b)(3) in the manner prescribed by an applicable regulation, is directory rather than mandatory. The fact that a Code provision conditions the entitlement of a tax benefit upon compliance with respondent's regulation does not mean that literal as opposed to substantial compliance is mandated. Cary v. Commissioner, supra.
Bond v. Commissioner, supra at 41. Petitioners *406 contend that they complied with the applicable statute and regulations. The regulations provide that they must maintain cost basis records when the information is available. Sec. 1.170A-13(b)(3)(ii), Income Tax Regs. Petitioners argue that they had reasonable cause for not providing this information because they did not retain cost basis records after their accountant advised them, based on the instructions for the 1984 return, that they were not needed. Also, petitioner had more records of his basis in My Fair Lady II in 1984 and 1985 than he did at trial because he had two divorces and sold his business in the interim. Petitioner did not retain every written record of the cost basis of the trawler. From the few receipts stipulated by the parties, a letter from Lower establishing what petitioner paid Baldwinsville for the boat, and a 1984 satisfaction of a $ 61,200 mortgage on the vessel, petitioner produced written evidence of a cost basis of approximately $ 69,000 at trial. The instructions to the 1984 Form 1040 stated that a taxpayer who claims a deduction for the donation of property worth more than $ 200, where the value was determined by appraisal, must provide information *407 about the cost or other basis of the donated property if the donated property was owned less than 5 years or the deduction amount must be reduced by any amount that would have been ordinary income or long-term capital gain if the property had been sold at its fair market value (the required adjustment under section 170(e)(1)(A) or (B)). Respondent concedes that petitioner owned the boat for more than 5 years. My Fair Lady II was not property described in section 170(e)(1)(A) or (B). Thus, the instructions did not require petitioner to include cost basis information. The cost basis of the donated property is not needed to calculate petitioner's charitable contribution deduction. The amount of the charitable contribution resulting from a bargain sale is the excess of the fair market value of the property over the purchase price paid by the donee. See sec. 170(e)(1). Estate of Bullard v. Commissioner, 87 T.C. 261, 265 (1986); Stark v. Commissioner, 86 T.C. 243, 255-256 (1986). Fair market value is the price at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion *408 to buy or sell and both having a reasonable knowledge of relevant facts. United States v. Cartwright, 411 U.S. 546, 551 (1973); Johnson v. Commissioner, 85 T.C. 469, 476 (1985). By bench opinion, we decided that the boat was worth $ 160,000 when donated. There is no dispute that petitioner donated My Fair Lady II, that two qualified appraisers appraised the boat shortly before it was donated, and that the donee was qualified to receive a charitable contribution. Petitioners obtained two timely appraisals of the donated property before deducting the contribution. Petitioners merely failed to maintain all written records of their cost basis in the property. This information was not required to be included on petitioners' return and is irrelevant to the calculation of the amount of the charitable contribution deduction. Section 1.170A-13(b)(3)(ii), Income Tax Regs., states that where the form or its instructions requires the taxpayer to provide information about the acquisition date of the property or the cost basis as described in section 1.170A-13(b)(3)(i)(A) and (B), Income Tax Regs., and the taxpayer has reasonable *409 cause for not being able to do so, the taxpayer should attach an explanatory statement to the return. Thus, even where the form or its instructions requires cost basis information, failure to maintain cost basis records is not fatal to the claim of charitable contributions if the taxpayer's grounds for not doing so are reasonable. It follows that where the return form or its instructions do not require the taxpayer to provide information on the cost basis of the donated property, a taxpayer's reasonable failure to maintain that information should not be fatal to the claimed charitable contribution. Similarly, where the regulations require that the taxpayer maintain cost basis records where the information is "available", the taxpayer's disposal of cost basis records after his accountant advised him, based on the instructions for the 1984 return, that they were not needed should not be fatal to the claimed charitable contribution. We find that petitioners had reasonable cause, as described in section 1.170A-13(b)(3)(ii), Income Tax Regs., for not maintaining this information. Accordingly, we conclude that petitioners have substantially complied with section 170(a)(1) and section *410 1.170A-13(b)(3), Income Tax Regs., and are therefore entitled to a charitable deduction. The denial of a charitable deduction under these circumstances would constitute a sanction which is not warranted or justified. Bond v. Commissioner, 100 T.C. at 42; see Columbia Iron & Metal Co. v. Commissioner, 61 T.C. 5, 10 (1973). Because we have found that petitioners substantially complied with the regulations, we need not reach their other arguments. To reflect the foregoing and concessions of the parties, Decision will be entered under Rule 155. Footnotes
1. For taxable years 1986 and 1987, sec. 6653(a)(1) and (2) was renumbered sec. 6653(a)(1)(A)and (B).↩
2. Fifty percent of the interest due on the entire deficiency.↩