**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOHN T. HEWITT; LINDA L. HEWITT,
Petitioners-Appellants,

v.                                                                          No. 98-1386

COMMISSIONER OF INTERNAL REVENUE,
Respondent-Appellee.

Appeal from the United States Tax Court.
(Tax Ct. No. 95-17146)

Argued: October 26, 1998

Decided: November 19, 1998

Before MICHAEL and MOTZ, Circuit Judges, and
BOYLE, Chief United States District Judge for the
Eastern District of North Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Mary Jane Hall, MEZZULLO & MCCANDLISH, Nor-
folk, Virginia, for Appellants. Curtis Clarence Pett, Tax Division,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Appellee. **ON BRIEF:** Donna S. Rucker, MEZZULLO &
MCCANDLISH, Norfolk, Virginia, for Appellants. Loretta C.
Argrett, Assistant Attorney General, Richard Farber, Tax Division,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

John T. Hewitt and Linda L. Hewitt, husband and wife, appeal from a decision of the United States Tax Court holding that the Hewitts were not entitled to certain charitable contribution deductions. Because we find the taxpayers' failure to comply with the substantiation requirements fatal to the allowance of their charitable contribution deductions, we affirm.

I.

The parties stipulated to all relevant facts. During the taxable years 1990 and 1991, the Hewitts made gifts of the stock of Jackson Hewitt Tax Service, Inc. (a company they owned) to the Hewitt Foundation and the Foundry United Methodist Church. At the time of the gifts, the market for Jackson Hewitt stock operated primarily through individuals or organizations contacting the company and offering to buy or sell shares at a given price. In arriving at the price, a potential purchaser had access to information on the most recent trades and offers to sell made by other shareholders. At the time of the gifts, approximately 700,000 shares of Jackson Hewitt stock were outstanding in the hands of approximately 400 organizations and individuals (including employees, franchisees, and others unrelated to the company). In addition to the company market, another market operated through Wheat, First Securities, Inc., in which hundreds to thousands of shares of Jackson Hewitt stock were traded between 1990 and 1992 for about 80 individual accounts. Not until several years after the gifts, beginning on January 29, 1994, was the company's stock traded on NASDAQ.

The Hewitts filed timely joint federal income tax returns for the taxable years 1990 and 1991. On the 1990 return, the Hewitts claimed a $26,000 deduction for a gift of 2000 shares of Jackson Hewitt stock

2

to the Foundation and a $7,000 deduction for a gift of 500 shares to the Church. On their 1991 return, the Hewitts claimed a $32,000 deduction for a gift of 800 shares to the Foundation and a $56,000 deduction for a gift of 1400 shares to the Church.

The Hewitts did not obtain any appraisal of the Jackson Hewitt stock they donated in 1990 and 1991. The fair market values claimed by the Hewitts with respect to these gifts were based on the average per-share price of Jackson Hewitt stock traded in bona fide, arm's-length transactions at approximately the same time the Hewitts made the gifts. The Commissioner concedes that the values the Hewitts claimed represent the fair market value of the contributed stock.

On audit, the Commissioner disallowed the deductions claimed by the Hewitts for the gifts of Jackson Hewitt stock because of the Hewitts' failure to comply with the appraisal requirement set forth in the regulations. See Treas. Reg. § 1.170A-13(c). The Commissioner accordingly assessed deficiencies and penalties against them for the 1990 and 1991 tax years. In its notice of deficiency, however, the Commissioner allowed the Hewitts deductions for the gifts of Jackson Hewitt stock in 1990 and 1991 to the extent of their basis in that stock. The Hewitts filed a petition in the Tax Court for redetermination of the deficiencies and penalties. The Tax Court held that the Hewitts were not entitled to deduct amounts in excess of those allowed by the Commissioner. From this decision, the Hewitts appeal.

II.

Whether the Hewitts' failure to comply with the appraisal requirements of § 1.170A-13 is fatal to their claimed deduction is a question of law, which we review de novo. See Ripley v. Commissioner, 103 F.3d 332, 334 (4th Cir. 1996).

Section 155 of the Tax Reform Act of 1984 contains the appraisal requirements for charitable contribution deductions. Pub. L. No. 98-369, § 155, 98 Stat. 494, 691 (1984). It provides that

> the Secretary shall prescribe regulations under section 170(a)(1) of the Internal Revenue Code of 1954, which

3

require an individual . . . claiming a deduction under section 170 . . .

(A) to obtain a qualified appraisal for the property contributed,

(B) to attach an appraisal summary to the return on which such deduction is first claimed for such contribution, and

(C) to include on such return such additional information (including the cost basis and acquisition date of the contributed property) as the Secretary may prescribe in such regulations.

Such regulations shall require the taxpayer to retain any qualified appraisal.

Id. (emphasis added). The legislative history further indicates that Congress intended the qualified appraisal requirement to be mandatory. The Conference Report for the Tax Reform Act of 1984 states that "pursuant to present law (sec. 170(a)(1)), which expressly allows a charitable deduction only if the contribution is verified in the manner specified by Treasury regulations, no deduction is allowed for a contribution of property for which an appraisal is required under the conference agreement unless the appraisal requirements are satisfied." H.R. Conf. Rep. 98-861 at 995 (1984), reprinted in 1984 U.S.S.C.A.N. 1445, 1683 (emphasis added).

The Secretary of the Treasury complied with § 155's congressional mandate by issuing Treasury Regulation § 1.170A-13 pursuant to § 170(a)(1) of the Internal Revenue Code. That statute provides: "[t]here shall be allowed as a deduction any charitable contribution . . . payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary." I.R.C.§ 170(a)(1); 26 U.S.C.A. § 170(a)(1) (1988 and Supp. 1998). Section 1.170A-13(c) of the Treasury Regulations requires that a taxpayer who makes a charitable contribution of any nonpublicly traded stock with a claimed value in excess of $10,000 must meet the substantiation requirements:

4

(2) <u>In general</u> . . . a donor who claims or reports a deduction with respect to a charitable contribution to which this paragraph (c) applies must comply with the following three requirements:

(A) Obtain a qualified appraisal . . . for such property contributed. . . .

(B) Attach a fully completed appraisal summary . . . to the tax return . . . on which the deduction for the contribution is first claimed (or reported) by the donor.

(C) Maintain records containing this information as required . . . .

Treas. Reg. § 1.170A-13(c)(2).

We have previously recognized that tax deductions are "a matter of legislative grace" and that "the taxpayer seeking the benefit of a deduction must show that <u>every condition</u> which Congress has seen fit to impose has been fully satisfied." <u>Wisely v. United States</u>, 893 F.2d 660, 666 (4th Cir. 1990) (emphasis added); <u>see also INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992); Boris I. Bittker and Lawrence Loken, <u>2 Federal Taxation of Income, Estates and Gifts</u>, ¶35.4.2 (2d ed. and Supp. 1990) ("When the strict substantiation rules apply to a particular donor . . . the donor must obtain a `qualified appraisal' of the property and attach a `fully completed appraisal summary' to the return on which the deduction is claimed for the gift.").

Before the tax court, the parties stipulated that, at the time of the donations, Jackson Hewitt stock was "nonpublicly traded stock" for the purpose of § 1.170A-13(c). It is undisputed that the Hewitts did not attempt to obtain any appraisals and that no appraisal summaries were attached to their returns. Instead, their returns set forth only the cost and claimed values of the stock, relying on third-party sales of the contributed stock and unrelated sales of stock around the time of the charitable contributions. As the charitable contribution was not verified under the Treasury Regulation's substantiation requirements, the Hewitts are not entitled to any deduction.

5

Relying on Bond v. Commissioner, 100 T.C. 32 (1993), the Hewitts ask us to excuse their failure to obtain a qualified appraisal based on the "substantial compliance" doctrine. In Bond, the Tax Court held that a literal failure to comply with the substantiation requirements could be excused if the taxpayer substantially complied with those requirements. 100 T.C. 32. In that case, the taxpayers had contributed two blimps to a charitable organization. Id. at 33. The taxpayers obtained a professional appraisal of the blimps. Id. Although the appraiser never completed a document sufficient to meet the definition of "qualified appraisal" in § 1.170A-13(c)(3), he did fully complete an appraisal summary which was attached to the income tax return. Id. at 33-34. With the exception of the qualifications of the appraiser, which were submitted shortly after the audit began, the appraisal summary contained all the information required by the regulation to be included in the appraisal. Id. at 34-35, 42.

In holding that the taxpayers had substantially complied with the regulations, the Tax Court stated that "[i]n the case before us there is no question that a donation of the two airships was made during the taxable year, [and] that the subject of the donation was appraised at the amount claimed by petitioners as a charitable deduction during the taxable year by a qualified appraiser . . . . In fact, with the exception of the excellent qualifications of the appraiser all of these facts appeared on the Form 8283 attached to the return filed by petitioners." Id. at 41-42 (emphasis added). The court further distinguished the situation from that in which no appraisal is obtained, stating "this is not a case where petitioners failed to obtain a timely appraisal of the donated property and thereby failed to establish its value for claiming a contribution deduction on their return." Id. at 42. Thus, Bond does not suggest that a taxpayer who completely fails to observe the appraisal regulations has substantially complied with them. See also D'Arcangelo v. Commissioner, 68 T.C.M. (CCH) 1223 (1994) (obtaining an appraisal from a nonqualified appraiser does not constitute substantial compliance).

Moreover, in Bond, the taxpayers made a good faith effort to comply with the appraisal requirement. In the case at bar, the Hewitts utterly ignored the appraisal requirement. Furthermore, unlike the taxpayers in Bond, the Hewitts failed to supply all the information required by the regulations. Their returns lacked, among other items,

6

any indication of the number of shares donated, and failed to provide the "method of valuation used to determine the fair market value." See Treas. Reg. § 1.170A-13(c)(ii)(J). In sum, the Hewitts failed to substantially comply with the regulations.

Alternatively, the Hewitts attack the validity of§ 1.170A-13's definition of "publicly-traded securities." They argue that the regulatory definition of "publicly-traded securities" imposes restrictions not contemplated by the statute. The Hewitts had ample opportunity to raise this issue during the tax court proceedings. Because the interests of justice do not so require, we will not consider this issue raised for the first time on this appeal. See Brown v. McLean , ___ F.3d ___, 1998 WL 7590826, *7 (4th Cir. Oct. 30, 1998); Muth v. United States, 1 F.3d 246, 250 (4th Cir. 1993).

Finally, the Hewitts argue that the Tax Court should have allowed them deductions of $10,000 for each year because the statute and the regulations only require appraisals for charitable contributions of non-publicly traded stock with a claimed value that exceeds $10,000. See § 155(a)(2)(B), 98 Stat. at 691; Treas. Reg.§ 1.170A-13(c)(2)(ii)(B)(1). Initially, the record contains no evidence that the Hewitts made a request to the Tax Court for this relief. Furthermore, it is not the role of the Tax Court, nor of this court, to provide equitable concessions to a taxpayer. See Commissioner v. Mendel, 351 F.2d 580, 582 n.4 (4th Cir. 1965). "What should be allowed as a . . . deduction is a matter of policy for Congress, not the Courts." Id. (quoting United States v. Woodall, 255 F.2d 370, 373 (10th Cir. 1958)). The Hewitts claimed values for their contributions exceeding $10,000. Therefore, Treasury Regulation § 1.170A-13(c)(1)(i) provides that no deduction shall be allowed unless the appraisal requirement is satisfied. The appraisal requirement in this case was not satisfied, and therefore the Hewitts' charitable contribution deductions are limited to those amounts allowed by the Commissioner.

III.

For these reasons, the decision of the Tax Court is

AFFIRMED.

7