# United States Tax Court

T.C. Memo. 2023-58

AUBREE HILL,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 4629-22L.                                    Filed May 15, 2023.

————

Aubree Hill, pro se.

*Rachel L. Gregory*, for respondent.

## MEMORANDUM OPINION

LAUBER, *Judge*: In this collection due process (CDP) case, petitioner seeks review pursuant to section 6330(d)(1) of the determination by the Internal Revenue Service (IRS or respondent) to uphold a notice of intent to levy.[1] Respondent has moved for summary judgment under Rule 121, contending that there are no material facts in dispute and that his determination to sustain the proposed collection action was proper as a matter of law. We agree and accordingly will grant the Motion.

### *Background*

The following facts are derived from the parties' pleadings, Motion papers, and the Declarations and Exhibits attached thereto. *See* Rule 121(c). Petitioner, who worked as an administrative professional

_____

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[*2] at the National Aeronautics and Space Administration, resided in Maryland when she timely petitioned this Court.

Petitioner did not file a timely Federal income tax return for 2016, and the IRS prepared a substitute for return as authorized by section 6020(b). On March 5, 2020, petitioner filed a delinquent return for 2016, but she did not pay the tax shown as due on that return. The IRS assessed the $11,028 tax liability shown on the delinquent return along with additions to tax under section 6651(a) (for failure to timely file and pay) and section 6654 (for failure to pay estimated tax), plus accrued interest. Petitioner did not pay her 2016 liability upon notice and demand for payment.

On January 6, 2020, in an effort to collect petitioner's unpaid liability for 2016, the IRS issued her a Notice CP90, Intent to Seize Your Assets and Notice of Your Right to a Hearing. Petitioner timely submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing. On this Form she checked the box for "Offer in Compromise," adding that she was "in financial difficulties." She did not indicate an intention to challenge her reported liability for 2016.

Petitioner included with her hearing request a Form 433–A, Collection Information Statement for Wage Earners and Self-Employed Individuals. Among the monthly expenses reported on Form 433–A were $800 for food and clothing, $3,000 for housing, $320 for court-ordered payments, and $250 for childcare. Petitioner calculated her total monthly disposable income (monthly income minus monthly living expenses) as $1,839. She did not attach supporting documentation for these expenses.

The case was assigned to a settlement officer (SO1) from the IRS Independent Office of Appeals (Appeals). SO1 reviewed petitioner's file and verified that all requirements of applicable law and administrative procedure had been satisfied. On June 9, 2020, SO1 sent petitioner a letter acknowledging receipt of her hearing request and scheduling a telephone conference for July 16, 2020.

The telephone conference was held as scheduled. Petitioner stated that she wished to resolve her tax liability through an offer-in-compromise (OIC), and SO1 instructed her to download and complete Form 656, Offer in Compromise, and Form 433–A (OIC), Collection Information Statement for Wage Earners and Self-Employed Individuals, and to submit these documents within 30 days. SO1 informed

[*3] petitioner that she would need to re-file her returns for 2015 and 2017–2018, which had not properly posted to her account, before any collection alternative could be finalized. Petitioner did not dispute her underlying income tax liability for 2016 during the telephone conference or at any time during the CDP hearing.

On August 14, 2020, SO1 received a fax containing petitioner's 2015 and 2017–2018 tax returns. On each return petitioner selected the "single" filing status and listed no dependents. She did not include a Form 656 with this submission.

Following a pause related to the COVID pandemic, the IRS reassigned petitioner's case to another settlement officer (SO2). On September 14, 2021, SO2 mailed petitioner a letter stating that he had completed an analysis of her financial records, including her 2015–2018 returns and her Form 433–A. From this analysis, SO2 concluded that petitioner had monthly disposable income of $3,234. In calculating this amount, SO2 applied the local and national cost-of-living standards for a one-person household because petitioner had filed as "single" and listed no dependents on her tax returns. SO2 offered her an installment agreement (IA) whereby she would fully discharge her unpaid 2015–2018 tax liabilities by making direct-debit payments of $3,200 per month.

On October 2, 2021, petitioner contacted SO2 and stated that she could not afford payments that large. On October 12, 2021, she submitted a Form 433–A (OIC) reporting (among other things) monthly expenses of $1,500 for food and clothing, $3,000 for housing, and $297 for court-ordered payments. To substantiate the latter expense petitioner submitted a copy of a 2016 divorce decree directing her to pay her ex-spouse $297 per month "as child support for the[ir] minor children" and detailing a joint-custody arrangement. Petitioner indicated that she had two sons, ages 20 and 14, but did not claim either of them as a dependent on her tax returns. Petitioner calculated her monthly disposable income as $1,669.

On October 19, 2021, SO2 informed petitioner that he had recomputed her monthly disposable income as $2,043 in light of her submissions. SO2 continued to adjust downward certain of her reported expenses (for food, clothing, and housing) to reflect local and national expense standards. But he allowed the costs of court-ordered child support and $2,591 for taxes, noting that petitioner had neglected to include any

[*4] expense in this category. *See Internal Revenue Manual* (IRM) 5.8.5.22.4(10) (Sept. 24, 2021).

Although SO2 calculated petitioner's monthly disposable income as $2,043, he offered to "split the difference" with her. Recognizing that "the cost-of-living for the D.C. metro area is higher than [the local and national] standards," he allowed an additional $200 of monthly expenses. By letter dated October 19, 2021, he offered petitioner a direct-debit IA with a monthly payment of $1,800, which would fully discharge her 2015–2018 tax liabilities in 24 months.

SO2 asked that petitioner respond to his offer within ten days, i.e., by October 29, 2021, advising that he would sustain the proposed levy if she did not do so. As of November 8, 2021, petitioner had made no response. On November 9, 2021, SO2 closed the CDP case and recorded his recommendation that the collection action be sustained. On January 13, 2022, the IRS issued petitioner a notice of determination sustaining the proposed levy for 2016, and petitioner timely petitioned for review. On October 19, 2022, respondent filed a Motion for Summary Judgment, to which petitioner timely responded.

## *Discussion*

### A. *Summary Judgment*

The purpose of summary judgment is to expedite litigation and avoid unnecessary and time-consuming trials. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). We may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(a)(2); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). The burden of proof rests on the moving party. *Bond v. Commissioner*, 100 T.C. 32, 36 (1993). But where the moving party properly makes and supports a motion for summary judgment, the nonmoving party must set forth specific facts showing that a genuine dispute of material fact exists for trial. Rule 121(d); *Sundstrand Corp.*, 98 T.C. at 520.

In her Response to the Motion for Summary Judgment, petitioner does not identify any genuine dispute as to any material fact. We find this case appropriate for summary adjudication.

**[\*5]** B.    *Standard of Review*

Section 6330(d)(1) does not prescribe the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case. The general parameters for such review are marked out by our precedents. Where the taxpayer's underlying liability is not in dispute, we review the IRS decision for abuse of discretion only. *Goza v. Commissioner*, 114 T.C. 176, 182 (2000). Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. *See Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006).

Petitioner acknowledges in her Response to the Motion for Summary Judgment that she "does not argue the amount [of tax] owed." The administrative record contains no indication that she disputed her underlying tax liability for 2016 at Appeals. We thus review the IRS's decision for abuse of discretion only. *See Goza*, 114 T.C. at 182.

C.    *Abuse of Discretion*

In deciding whether SO2 abused his discretion in sustaining the proposed levy, we consider whether he (1) properly verified that the requirements of applicable law or administrative procedure have been met, (2) considered any relevant issues petitioner raised, and (3) determined whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of [petitioner] that any collection action be no more intrusive than necessary." *See* § 6330(c)(3). We find that SO2 properly discharged all of his responsibilities under these provisions.

The record shows that SO2 conducted a thorough review of the transcripts of petitioner's account and verified that the requirements of applicable law and administrative procedure were followed. The notice of determination recounts, and petitioner does not dispute, that the IRS properly assessed the tax liability she had reported on her delinquent 2016 return.

Taxpayers may raise at a CDP hearing relevant issues relating to the collection action and are entitled to make offers of collection alternatives. *See* § 6330(c)(2) and (3). Section 6159(a) authorizes the IRS to enter into a written agreement allowing a taxpayer to pay a tax liability in installments if it concludes that the agreement "will facilitate full or partial collection of such liability." Although petitioner initially indicated interest in an OIC, the financial information she supplied

[*6] indicated that she could pay her tax liability in full. Throughout the CDP hearing, SO2 accordingly negotiated with petitioner over the terms of a "direct debit" plan, a type of IA.

The decision to accept or reject an IA lies within the Commissioner's discretion. *See Thompson v. Commissioner*, 140 T.C. 173, 179 (2013). A taxpayer's ability to pay is determined by calculating the excess of income over necessary living expenses. *Chavis v. Commissioner*, No. 11835-20L, 158 T.C., slip op. at 10 (June 15, 2022); *Rosendale v. Commissioner*, T.C. Memo. 2018-99, 116 T.C.M. (CCH) 4, 6; IRM 5.16.1.2.9 (Apr. 13, 2021). In reviewing for abuse of discretion, we do not recalculate a taxpayer's ability to pay or substitute our judgment for an SO's. *See O'Donnell v. Commissioner*, T.C. Memo. 2013-247, 106 T.C.M. (CCH) 477, 481.

In assessing ability to pay, SOs routinely adjust taxpayers' reported expenses to conform to applicable local and national cost-of-living standards. Although petitioner questions the downward adjustments SO2 made here, we have repeatedly held that an SO does not abuse his discretion by adhering to such standards. *See Chavis*, 158 T.C., slip op. at 10; *Ansley v. Commissioner*, T.C. Memo. 2019-46, 117 T.C.M. (CCH) 1242, 1246 (noting that burden is on taxpayer to justify departure from local standards). That is so even if application of these standards would force a taxpayer to change his or her lifestyle. *See Friedman v. Commissioner*, T.C. Memo. 2013-44, 105 T.C.M. (CCH) 1288, 1290.

Generally, these expense standards are applied with reference to the total number of taxpayers and dependents shown on the taxpayer's most recently filed Federal income tax return. *See* IRM 5.15.1.8(7) (July 24, 2019). Although petitioner supplied evidence that she provided some support to children who lived with her for part of the year, she did not claim them as dependents on her most recent tax return (filed for 2019). Thus, it was not an abuse of discretion for SO2 to use the expense standards for a one-person household in calculating petitioner's ability to pay. *Cf. Serna v. Commissioner*, T.C. Memo. 2022-66, 123 T.C.M. (CCH) 1347, 1349 (sustaining SO's decision to apply expense standards for two-person household where taxpayer lived with and supported five other individuals but filed as "single" and claimed only one dependent).

SO2 initially proposed a $3,200-per-month direct-debit plan. When petitioner replied that this exceeded her ability to pay, SO2 gave her the opportunity to supply additional information. After reviewing several rounds of financial information, SO2 significantly reduced his

[*7] estimate of her ability to pay. Allowing expenses for taxes and court-ordered child support and making several other adjustments, SO2 calculated that she had $2,043 of monthly disposable income available for payment of her tax debt.

Acknowledging the relatively high cost of living in the D.C. metropolitan area, SO2 then made a further adjustment in petitioner's favor, reducing the required monthly payment under a direct-debit plan to $1,800. *See* IRM 5.15.1.8 (permitting settlement officer to deviate from expense standards). This offer was $39 lower than the monthly disposable income petitioner had reported on her original Form 433–A, and it was within $131 of the monthly disposable income shown on her Form 433–A (OIC). On the foregoing facts, SO2's decision to offer an $1,800-per-month payment plan was comfortably within IRS guidelines. *See Chavis*, 158 T.C., slip op. at 10 (noting that the Court does not substitute its judgment for an SO's).

By letter dated October 19, 2021, SO2 gave petitioner ten days to respond to his $1,800-per-month offer. He waited 11 days after that deadline had passed before closing the case. When a settlement officer gives a taxpayer a reasonable timeframe in which to respond, it is not an abuse of discretion to move ahead if the taxpayer fails to reply. *Pough v. Commissioner*, 135 T.C. 344, 351 (2010); *Hartmann v. Commissioner*, T.C. Memo. 2018-154, 116 T.C.M. (CCH) 301, 304, *aff'd*, 785 F. App'x 906 (3d Cir. 2019). An SO is not required to negotiate indefinitely or wait any specific time before issuing a determination. *Kuretski v. Commissioner*, T.C. Memo. 2012-262, 104 T.C.M. (CCH) 295, 298, *aff'd*, 755 F.3d 929 (D.C. Cir. 2014).

Petitioner asserts in her Petition that "due to delays with local mail delivery, [she] did not receive any letter from the IRS dated October 19, 2021." However, another 65 days passed before the IRS issued the notice of determination, and at no point during that period did petitioner follow up with SO2 to ask about the status of her case. And even if SO2 were thought to have closed the case prematurely, we find that any error was harmless. In her Petition, petitioner characterizes the $1,800 monthly payment plan as "much higher than [she] can afford." This strongly suggests that she would have rejected SO2's $1,800-per-month offer. It is thus hard to see how she was prejudiced by any alleged non-receipt of his letter.

Finally, petitioner asserts that SO2 erred by declining to enter into an OIC. *See* § 7122 (providing the IRS with discretionary authority

**[\*8]** to compromise an outstanding tax liability). Although petitioner checked the box for "Offer in Compromise" on her Form 12153, she and the SOs confined their discussions to the terms of a direct-debit IA. Petitioner never submitted a Form 656, despite SO1's request that she do so if she wished to pursue that form of collection alternative.

It is up to the taxpayer to propose an OIC for Appeals' consideration. *Reed v. Commissioner*, 141 T.C. 248, 254 (2013), *supplemented by* T.C. Memo. 2014-41; *Bergdale v. Commissioner*, T.C. Memo. 2014-152, 108 T.C.M. (CCH) 95, 97. And a taxpayer who wishes to pursue an OIC must submit a Form 656. *Godwin v. Commissioner*, T.C. Memo. 2003-289, 86 T.C.M. (CCH) 451, 457, *aff'd*, 132 F. App'x 785 (11th Cir. 2005). Even where a taxpayer has proposed an OIC, which petitioner did not do, it is not an abuse of discretion for an SO to sustain collection action where the taxpayer has failed to document her offer on a fully completed Form 656. *See Gentile v. Commissioner*, T.C. Memo. 2013-175, 106 T.C.M. (CCH) 75, 77, *aff'd*, 592 F. App'x 824 (11th Cir. 2014).[2]

In sum, we find that Appeals properly balanced the need for efficient collection of taxes with petitioner's legitimate concern that the collection action be no more intrusive than necessary. Petitioner made no specific proposal for an OIC, and she rejected (or failed to respond to) the payment plans that SO2 offered her. Finding no abuse of discretion in any respect, we will grant summary judgment for respondent. We note that petitioner is free to submit to the IRS at any time, for its consideration and possible acceptance, a collection alternative in the form of an IA or OIC, supported by the requisite financial information.

To reflect the foregoing,

*An appropriate order and decision will be entered for respondent.*

---

[2] Petitioner contends that she "was never advised to submit Form 656." However, SO1's case activity record shows that he informed her of the need to submit Form 656 as part of any OIC request. Petitioner clearly had notice of the need to submit a completed Form 656. Appearing in bold-faced type at the top of the Form 433–A (OIC) that she faxed to SO2 on October 12, 2021, is the instruction: "This form should only be used with the Form 656, Offer in Compromise."