T.C. Summary Opinion 2001-21


UNITED STATES TAX COURT


CROP CARE APPLICATORS, INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2996-00S.               Filed March 6, 2001.


William A. Duncan (an officer), for petitioner.

Paul K. Webb, for respondent.


DEAN, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years in issue.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined deficiencies of $9,821, $9,127, and $6,166 in petitioner's Federal income taxes for taxable years 1995, 1996, and 1997, respectively. After concessions,[1] the sole issue for decision is whether petitioner is entitled to credits for Federal tax on fuels pursuant to sections 34 and 6420.

### Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by reference. At the time the petition was filed in this case, petitioner was a corporation organized in the State of California. During the years in issue, petitioner's principal place of business was Shafter, California. William A. Duncan (Mr. Duncan), president and sole shareholder of petitioner, signed the petition and appeared at trial on behalf of petitioner.

Petitioner is an agricultural chemical application company that applies pesticides to various farms and orchards in California. The pesticides are applied by tractor-pulled spray rigs. Petitioner enters into either verbal or written service contracts with its customers depending on the size of the farming operation. Petitioner supplies its customers with a cost sheet

---

[1] The parties stipulated that respondent correctly reduced petitioner's taxable income for tax years 1996 and 1997 and, correspondingly, correctly adjusted petitioner's claimed net operating loss amount for 1997.

which outlines charges for the application of pesticides at different volumes per acre.

The written contracts petitioner entered into have no explicit provision addressing fuel tax credits but provide that petitioner will be responsible for "wages, salaries, bills and taxes for labor, materials and equipment used in performance" of its services.  The contracts further provide:

> Company will pay Contractor for the work performed under this agreement as outlined in Exhibit "B" attached.  No tax (or an equivalent amount) or any extra charge shall be added to the price or compensation as specified in that Exhibit unless otherwise expressly stated.  Unless otherwise expressly provided, Contractor shall pay all sales, use, excise and any other applicable taxes now or hereafter enforced upon or with respect to or measured by the materials, equipment and work furnished by the Contractor or the compensation paid to persons employed in connection with performance by Contractor, and Contractor shall indemnify Company against any and all liabilities and expenses of whatsoever nature resulting from Contractor's failure to pay the same.

Upon completion of its services, petitioner issues invoices to its customers stating the number of acres treated, the unit price, and the total payment due.  Petitioner's customers during the years in issue never had nor requested information about the amount of fuel that was expended by petitioner in applying pesticides on their land.

Before establishing Crop Care Applicators, Inc. in 1984, Mr. Duncan managed the pest control department of a farming company that farmed 40,000 acres in California.  As manager, Mr. Duncan

was responsible for arranging and contracting for the application of pesticides. Mr. Duncan never requested information on the amount of fuel used by the pesticide applicators with whom he contracted.

Petitioner filed Forms 4136, Credit for Federal Tax Paid on Fuels, with its 1995, 1996, and 1997 Forms 1120, U.S. Corporation Income Tax Returns. Petitioner, however, did not secure formal waivers of the fuel tax credits from its customers before filing its returns. In the notice of deficiency, respondent determined that petitioner was not entitled to credits for Federal tax on fuels for the years in issue because petitioner failed to obtain these waivers.

After receiving respondent's notice of deficiency for the 1995, 1996, and 1997 taxable years, petitioner obtained a waiver from Sunworld International relinquishing its rights to claim any credit or payment for gasoline used by petitioner during the years in issue and stating that it has not claimed any credits or payments for that gasoline. After petitioning the Court for a redetermination of the deficiencies, petitioner obtained additional waivers from four other customers. The five waivers obtained by petitioner together relate to approximately 70 percent of petitioner's gross revenue during each of the years in issue.

Petitioner argues that it is entitled to the fuel tax credits at issue because it followed all instructions on Form 4136, Credit for Federal Tax Paid on Fuels, for claiming the credits, and the farmers to whom petitioner provided services never claimed or intended to claim credits for petitioner's use of fuel on their farms as evidenced by the parties' agreements, invoices, payments for services, and waivers.

## Discussion

Section 34(a)(1) allows a credit against Federal income tax for the taxable year in an amount equal to the sum of the amounts payable to the taxpayer under section 6420 with respect to gasoline used during the taxable year on a farm for farming purposes (determined without regard to section 6420(g)). Under section 6420(a), the "ultimate purchaser" of the gasoline is entitled to a credit determined by multiplying the number of gallons used by the rate of tax applied to the gasoline on the date he purchased the gasoline.

Except as provided in section 6420(c)(4), gasoline is considered to have been used for farming purposes only if used by the owner, tenant, or operator of a farm for various farming purposes. See sec. 6420(c)(3). The owner, tenant, or operator of a farm generally is treated as the user and ultimate purchaser of gasoline used for the farming purposes described in section 6420(c)(3)(A). See sec. 6420(c)(4)(A). Section 6420(c)(4),

however, provides that "an aerial or other applicator of fertilizers or other substances" who is the ultimate purchaser of the gasoline will be treated as having used the gasoline on a farm for farming purposes if the owner, tenant, or operator of the farm "waives (at such time and in such form and manner as the Secretary shall prescribe) his right to be treated as the user and ultimate purchaser of the gasoline".

Pursuant to the authority granted in section 6420(c)(4)(B)(ii), the Secretary prescribed section 48.6420-4(l)(2), Manufacturers & Retailers Excise Tax Regs., which provides:

> To waive the right to be treated as user and ultimate purchaser of gasoline which is used on a farm by an aerial applicator or other applicator, the owner, tenant, or operator of a farm who is otherwise entitled to treatment as user and ultimate purchaser must execute an irrevocable written agreement (as here described) <u>no later than the date on which the aerial applicator or other applicator claiming the credit or payment files its return for the taxable year in which the gasoline is used</u>. * * * The waiver may be in the form shown under paragraph (l)(6) of this section or in any other form that meets the requirements of this paragraph and clearly states that the owner, tenant, or operator of the farm knowingly waives the right to receive the credit or payment. [Emphasis added.]

The agreement in which the owner, tenant, or operator of the farm waives his right to receive a credit under section 6420 may be a separate document or it may appear in the applicator's invoice for service or other document from the applicator to the owner, tenant, or operator.  See sec. 48.6420-4(l)(3),

Manufacturers & Retailers Excise Tax Regs.  If the waiver agreement appears on an invoice or other document, however, it must be set off from other material in the document and executed separately from any other item which requires the owner's, tenant's, or operator's signature.  See id.  The waiver should be sufficient to put the owner, tenant, or operator of the farm on notice that he has waived the right to receive the credit.  See id.  Copies of agreements waiving rights to credits or payments under section 6420 are not to be submitted to the Internal Revenue Service unless a request is made by the Service.  See sec. 48.6420-4(l)(4), Manufacturers & Retailers Excise Tax Regs.

Petitioner did not obtain waivers from its customers at such time and in such form and manner as the Secretary prescribed in section 48.6420-4(l)(2), Manufacturers & Retailers Excise Tax Regs.  The written contracts petitioner and its customers executed contain no provision explicitly addressing the fuel tax credit.  The waivers petitioner did obtain were received several years after the taxable years in issue and after petitioner received the notice of deficiency.

Petitioner does not challenge the validity of the regulation but asserts that it should not be held to the requirements of section 48.6420-4(l)(2), Manufacturers & Retailers Excise Tax Regs., when it accurately completed Form 4136, and the form instructions do not indicate that a pesticide applicator must

obtain a waiver in order to claim credits for fuel taxes. The authoritative sources of tax law, however, are statutes, regulations, and judicial decisions, and not instructions published by the Internal Revenue Service. See Sherwin-Williams Co. Employee Health Plan Trust v. Commissioner, 115 T.C. 440, 451 (2000); Casa de La Jolla Park, Inc. v. Commissioner, 94 T.C. 384, 396 (1990).

Although petitioner may not rely merely on the printed instructions on Form 4136, the question emerges whether petitioner substantially complied with the requirements of the applicable regulation such that it should not be held to strict adherence with all regulatory requirements. This Court has applied the substantial compliance doctrine and excused taxpayers from strict compliance with procedural regulatory requirements, provided that the taxpayer substantially complied by fulfilling the essential statutory purpose. See Bond v. Commissioner, 100 T.C. 32 (1993); American Air Filter Co. v. Commissioner, 81 T.C. 709, 720 (1983); Tipps v. Commissioner, 74 T.C. 458, 468 (1980); Taylor v. Commissioner, 67 T.C. 1071 (1977); Hewlett-Packard Co. v. Commissioner, 67 T.C. 736, 748 (1977); Sperapani v. Commissioner, 42 T.C. 308, 330-333 (1964). Substantial compliance, however, cannot relieve a taxpayer of strict adherence if the statutory or regulatory requirements relate to the substance or essence of the statute. See Bond v. Commissioner, supra at 41; Sperapani v.

Commissioner, supra at 331.  In other words, the doctrine of substantial compliance cannot be applied if to do so would defeat the policies of the underlying statutory provisions.  See Estate of Chamberlain v. Commissioner, T.C. Memo. 1999-181.

The legislative history of section 6420 clearly reflects that the purpose of the statute was to provide financial relief to farmers.  See S. Rept. 1609, 84th Cong., 2d Sess. (1956), 1956-1 C.B. 989.  As section 6420 was originally enacted only the owner, tenant, or operator of a farm was eligible for the fuel credit.  Pesticide applicators deliberately were excluded from the benefits of the credit because there was no assurance that they would pass the benefit on to farmers.  See id.

Effective on April 1, 1979, section 6420(c) was amended to allow "aerial applicators" to receive the fuel credit if the owner, tenant, or operator of the farm consents by waiving his right to the credit.  Act of October 14, 1978, Pub. L. 95-458, sec. 3, 92 Stat. 1257.  The amendment was designed to alleviate the burden to both aircraft operators and farmers from the system under which the aircraft operator must supply each farm owner, operator, or tenant with sufficient information concerning the number of gallons of fuel consumed by the aircraft on a particular farm.  See S. Rept. 95-1127, 1978-2 C.B. 369, 371-372.  The Surface Transportation Assistance Act of 1982 expanded the availability of the credit to ground applicators if the farm

owner, operator, or tenant waives the right to be treated as the user and ultimate purchaser of the gasoline. See Pub. L. 97-424, sec. 511(f), 96 Stat. 2172; H. Rept. 97-945 at 2, 1983-1 C.B. 421.

The legislative history of section 6420 establishes that the requirement that applicators obtain waivers from their farm customers was not designed solely to ensure that two taxpayers would not claim entitlement to a tax credit for the same fuel. The requirement appears also to have been designed to ensure that farmers are knowledgeable about their entitlement to the fuel tax credit.

The waiver requirement, therefore, relates to the essence of the statute. To extend the credit to applicators without strict compliance to the waiver requirement would defeat the policies underlying the statutory provision.

It does not appear that anyone will receive the benefit of the section 34(a)(1) credit for the gasoline used by petitioner during the years at issue. Although we are sympathetic to petitioner's situation, we are constrained by and cannot disregard the plain language of the statute and the detailed requirements of the legislative regulation in order to achieve what would appear to be a more equitable result in this case. Accordingly, petitioner is not entitled to credit for Federal tax on fuels.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered

for respondent.