**Daniel L. HERMAN and Barbara J. Herman**

v.

**UNITED STATES of America**

and

**Paul Brown**

v.

**United States of America.**

Nos. 2:98–CV–290, 2:99–CV–119.

United States District Court, E.D. Tennessee.

Sept. 28, 1999.

Walter L. Davis, Jr., Johnson City, TN, J. Leigh Griffith, Nancy S. Jones, Waller Lansden Dortch & Davis, Nashville, TN, for Daniel L. Herman, Barbara J. Herman, Paul Brown, plaintiffs.

Michael J Martineau, U.S. Department of Justice, Tax Division, Washington, DC, for United States of America, defendant.

## *ORDER*

HULL, District Judge.

The plaintiffs in these consolidated actions, Mr. and Mrs. Daniel L. Herman and Mr. Paul G. Brown, are seeking to recover federal income taxes, tax penalties and related interest which they contend was erroneously assessed and collected from them in connection with charitable deductions taken for their contributions of medical equipment to Johnson County Hospital, Inc. The case is now before the Court on cross-motions for summary judgment.

## BACKGROUND

Johnson County Memorial Hospital, Inc., located in Mountain City, Tennessee, filed a voluntary petition under Chapter 11 of the Bankruptcy Code in April of 1987. Plaintiffs Herman and Brown, and a friend of theirs named Tommy Walsh, Mountain City businessmen, were anxious to re-open the hospital for the community. They formed a limited liability company, recruited a hospital board, and worked with various federal, state, and local officials to reopen the hospital. They learned that the interim administrator of the defunct hospital was planning to auction off all its equipment and was hoping to clear $37,-000.00 after paying the costs of the auction.[1] The plaintiffs approached the bankruptcy court and offered to buy all the equipment for $40,000.00. The offer was accepted and, in October of 1988, each plaintiff contributed $20,000.00 toward its purchase. In December of 1990, they donated the equipment to Johnson County

---

1. Attorney B. Gail Reese, who represented Johnson County Memorial Hospital, Inc. in the bankruptcy proceedings, has testified by affidavit that the figure of $37,000.00 was the result an appraisal of the equipment's liquidation value made by George Garrick of Mountain Medical Equipment.

Hospital, Inc. for the hospital-to-be. Mr. Brown's accountant suggested that they have the hospital equipment appraised so that they could each take a charitable deduction for the gift. They asked the hospital's administrator if he could find some people to do the appraisals. In December of 1990, George Garrick of Mountain Medical Equipment estimated the fair market value of the equipment to be $1,037,348.00. Rick Rader, then of Skyland Hospital Supply, estimated the resale value of the equipment at $1,002,380.00 in January of 1991.

The Hermans claimed a charitable contribution deduction on their federal income tax return for the year 1990, in the amount of $509,932.00 using the average of the Rader and Garrick appraisals. They later determined that the Garrick appraisal had been in error and that the lower, Rader, appraisal set forth the correct market value of the hospital equipment and amended their return to claim a deduction in the amount of $501,190.00. Under the 30% limitation on the use of charitable contribution deductions pursuant to Section 170(b), the excess contribution deduction was carried forward to tax years 1991, 1992, and 1993.

Paul Brown claimed a charitable contribution deduction on his federal income tax return for the year 1990 in the amount of $501,190.00 (based on the Rader appraisal) and, like the Hermans, carried the excess contribution forward to the years 1991, 1992, and 1993.

On audit, the IRS allowed the Hermans a charitable contribution deduction for the year 1990 in the amount of $20,000.00, representing their share of the purchase price of the equipment from the bankruptcy court and disallowed the remaining deduction. The IRS also imposed the "gross valuation misstatement" penalty in the

amount of $23,218.80, pursuant to 26 U.S.C. Section 6662. On audit, the IRS allowed Paul Brown the same charitable deduction of $20,000.00 for tax year 1990 and disallowed the remaining deduction. It imposed upon him a gross valuation misstatement penalty in the amount of $13,472.40.

## THE PLAINTIFFS' MOTION

The plaintiffs point out that the United States has already admitted that they are entitled to a charitable deduction under Section 170 of the Internal Revenue Code and that the government is merely challenging their valuation of the donated equipment. They claim that their proof of the fair market value, based upon Mr. Rader's appraisal, is the only real evidence on that issue and that, therefore, they should be entitled to a judgment in their favor as a matter of law. They offer the deposition of Mr. George Garrick to show that, when he advised the Bankruptcy Court that they could get $37,000.00 for the equipment, he was talking about its liquidation value—what he would pay for it if he were planning to turn around and re-sell it. They also point out that neither appraisal obtained by the hospital's administrator, Harry Peterson, was paid for by them or as a percentage of the valuation assessed.

## THE UNITED STATES' MOTION

The United States first takes the position that the plaintiffs are not eligible for *any* charitable deduction because they failed to satisfy the substantiation requirement of Section 170(a)(1). This argument is based upon the government's assertion that Mr. Rick Rader was not a "qualified appraiser"[2] within the meaning of Income Tax Regulation § 1.170A–13(c)(5) and that his appraisal was not a "qualified appraisal" conforming with the many requirements of that same regulation.[3]

---

**2.** Because, according to the IRS, he does not hold himself out to the public as an appraiser and does not perform appraisals on a regular basis.

**3.** His appraisal did not give the expected date of the contribution to the donee; did not give

the terms of any agreement or understanding entered into by or on behalf of the donor or donee that relates to the use, sale, or other disposition of the property contributed; did not indicate that it was prepared for income tax purposes; did not give the date or dates upon which the property was appraised; did

The United States justifies the penalties imposed by arguing that the plaintiffs cannot show a reasonable cause for their gross overvaluation of the equipment because they did not rely on a qualified appraisal by a qualified appraiser and they did not make a reasonable inquiry into the value of the equipment when the appraisals they obtained indicated a valuation which was approximately 25 times what they had paid for it.

Then, presumably admitting that the plaintiffs nevertheless are entitled to a charitable contribution deduction, the United States argues that the fair market value of the donated hospital equipment should be the $40,000.00 amount paid to the Bankruptcy Court for its purchase. It suggests that this was an arms-length transaction made between a willing seller and a willing buyer and therefore gives the best evidence of what the property was worth. It argues the case of *Weitz v. Commissioner*, T.C.Memo 1989–99, 1989 WL 20900 (1989), for the proposition that the donated hospital equipment should be based on the price the taxpayers paid for the equipment in the bankruptcy sale.

## DISCUSSION

The United States has previously indicated that the plaintiffs are, in fact, entitled to charitable deductions and may not suggest otherwise at this late stage of the proceedings. Accordingly, the plaintiffs are correct that the issues remaining for determination are the fair market value of the donated property and the propriety of the gross misstatement of value penalties.

The propriety of the penalties is, of course, linked to the question of fair market value. Therefore, the question of valuation must be decided first.

■ For purposes of Section 170 of the Internal Revenue Code, the "fair market value" of an item is the hypothetical sale price that would be negotiated between a knowledgeable and willing buyer and a knowledgeable and willing seller, neither of whom are compelled to buy or sell. The Court does not agree that the bankruptcy court was a willing seller not compelled to sell and does not agree that the price the plaintiffs paid for the equipment is relevant to the determination of the fair market value of the donated property. The evidence concerning the bankruptcy sale suggests that the sale of equipment was made in haste, without objection from the creditors, and that there was no hearing on valuation. The Court has read the *Weitz* case where the bankruptcy sale price *was* used for valuating donated property but finds that *Weitz* is distinguishable on its facts. There is no question that that decision turned on the fact that the donee hospital frequently purchased its equipment at bankruptcy sales and the fact that the plaintiffs were participating in a tax shelter scheme. There is no suggestion in this case that the plaintiffs even considered the tax consequences of their actions when they purchased and then donated the equipment and there is no evidence that the Johnson County Hospital routinely or ever purchased equipment at bankruptcy sales.

If the bankruptcy court's sale price cannot be used to determine the fair market value, the Court must decide whether Mr. Rader's appraisal may be relied upon to fix the value of the plaintiffs' gift.

■ The United States has argued that he is not a qualified appraiser and that his appraisal is not a qualified appraisal for tax purposes. However, Mr. Rader's affidavit indicates that he is accredited in medical sales by Health Industries Distribution Association's Education Foundation; that he has 30 years of experience in buying and selling new and used medical equipment; and that he regularly per-

not give the appraised fair market value as of the expected date of its contribution; did not indicate the method of valuation used to determine the fair market value; and did not give the specific basis for the valuation, such as any specific comparable sales transactions. In addition, the appraiser did not report his fee arrangement with the taxpayer to ensure that it was not based upon a percentage of the appraised value.

forms appraisals of hospital and medical equipment. The Court finds him fully qualified to make the appraisal in question.

The Court recognizes that his appraisal does not meet all the technical requirements of a "qualified appraisal" but the reason for this failure helps, rather than hurts, the plaintiffs in this instance. When Mr. Rader was asked by Mr. Peterson to survey and evaluate the equipment at the hospital he had no idea that his report would be used for tax purposes and he was not paid for his services. He thought he was going to determine what the hospital's needs were with the expectation that his company, Skyland Hospital Supply, Inc., would fill those needs and become the hospital's prime vendor for its consumable products. In this Court's judgment, this fact makes his report more reliable rather than less so. Presumably he would not want to overvalue equipment that his company could be expected to replace. For this reason, despite the fact that the appraisal does not conform to all the tax appraisal regulations, the Court finds that it is a qualified appraisal.

Because we have in the record a qualified appraisal made by a qualified appraiser, the Court is justified in relying upon it in deciding the valuation question. Mr. Rader's appraisal was made during the relevant time frame and it does not differ significantly from Mr. Garrick's appraisal which was made at the same time. Accordingly, the Court **FINDS** that the fair market value of the hospital equipment in question was $1,002,380.00, as indicated by Mr. Rader.

Because the Court has adopted Mr. Rader's appraisal, there is no basis for penalizing the plaintiffs pursuant to Section 6662(a) of the Internal Revenue Code for a gross valuation misstatement.

The Court fully recognizes that the extreme discrepancy between what the taxpayers paid for the hospital equipment and the valuation they claimed as charitable deductions is suggestive of fraud. The Court has very carefully examined all of the evidence in the record with this in mind but finds no fault on the part of the taxpayers. They appear to have recognized that a great deal of potentially valuable hospital equipment was about to be sold at a very low price and lost to the hospital they were hoping to bring into existence. They were not capitalizing on the distress sale price so they could resell the equipment at a profit but merely acting to keep it in place so that they could give it to the new hospital when it came into existence.

Later, when they were taking their tax deductions, they relied upon two appraisals which did not differ substantially. These appraisals were made by people selected by the hospital administrator, were not paid for by the taxpayers, and were not made for tax purposes. Neither appraiser can be said to have been acting as an advocate for the plaintiffs. In each case professional tax advisors examined the appraisals for the plaintiffs and found them to be appropriate. While it is true that these apparently altruistic efforts resulted in an income tax windfall for the plaintiffs, this does not mean that they acted with an intent to defraud or that they are not entitled to the benefit of this windfall. Rather, the facts of this case suggest that the debtor-hospital's Trustee grossly undervalued the equipment in question to the detriment of the hospital's creditors.

Accordingly, the plaintiffs' joint motion for summary judgment is hereby **GRANTED** and the Court **FINDS** they are entitled to a refund of the additional federal income tax, interest, and tax penalties assessed against them. Assuming the unchallenged figures offered by the plaintiffs are correct, the Hermans are entitled to a judgment in their favor in the amount of $191,870.34, plus interest, and Mr. Brown is entitled to a judgment in the amount of $318,888.65, plus interest.