T.C. Memo. 2010-45


UNITED STATES TAX COURT


NEWTON J. AND VONISE FRIEDMAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 19018-07.                    Filed March 11, 2010.


Ps claimed charitable contribution deductions for the donation of equipment in 2001 and 2002. Ps did not strictly comply with the substantiation requirements of sec. 1.170A-13, Income Tax Regs., but they contend their documentation satisfied the substantial compliance doctrine according to <u>Bond v. Commissioner</u>, 100 T.C. 32, 40-41 (1993).

<u>Held</u>: Ps did not establish substantial compliance because they did not provide adequate descriptions of the equipment and did not identify the valuation methods used, the manner of acquisition, and the cost bases of the equipment.

<u>Held</u>, <u>further</u>, Ps' documentation did not satisfy the requirement of sec. 170, I.R.C., that they obtain contemporaneous written acknowledgments of the donations.

<u>Held</u>, <u>further</u>, Ps are liable for accuracy-related penalties under sec. 6662(a), I.R.C.

<u>Theodore J. England</u>, for petitioners.

<u>Mark H. Pfeffer</u>, for respondent.


MEMORANDUM OPINION


NIMS, <u>Judge</u>:  Respondent determined the following deficiencies and penalties with respect to petitioners' Federal income tax:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|------------|----------------------|
| 2001 | $81,469 | $16,294 |
| 2002 | 80,779 | 16,156 |

The issues for decision are:  (1) Whether petitioners adequately substantiated deductions for noncash charitable contributions made during the years in issue; and (2) whether petitioners are liable for section 6662(a) accuracy-related penalties.  Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the years in issue.

## Background

This case was submitted fully stipulated pursuant to Rule 122.  The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference.  Petitioners resided in California at the time they filed their petition.

Petitioners timely filed Forms 1040, U.S. Individual Income Tax Return, for 2001 and 2002. On their 2001 return petitioners claimed $217,500 in noncash charitable deductions on Schedule A, Itemized Deductions, for donations of diagnostic and laboratory equipment to Global Operations and Development (Global Operations). On their 2002 return petitioners claimed $217,500 in charitable contribution deductions for donations of diagnostic and laboratory equipment to Global Operations and the University of Southern California (USC). The returns were prepared by Reed Spangler, a certified public accountant (C.P.A.).

To substantiate the 2001 donations petitioners attached to their 2001 return three Forms 8283, Noncash Charitable Contributions. These consisted of a Form 8283 for items appraised by Garson P. Shulman (2001 Shulman Form 8283), a Form 8283 for items appraised by Jack LeVan (2001 Jack LeVan Form 8283), and a Form 8283 summarizing the items listed in the two aforementioned Forms 8283 (2001 summary Form 8283). Petitioners included a separate written appraisal report and a receipt from Global Operations only for the items covered by the 2001 Shulman Form 8283.

Petitioners included with their 2002 return Forms 8283 for items appraised by John E. LeVan (2002 John E. LeVan Form 8283), Jack LeVan (2002 Jack LeVan Form 8283), and David S. Handelman (2002 Handelman Form 8283). Petitioners included a separate

written appraisal report and a receipt from Global Operations only for the items covered by the 2002 John E. LeVan Form 8283.

Respondent selected petitioners' 2001 and 2002 returns for examination. On May 11, 2004, for purposes of the examination, Mr. Handelman prepared an appraisal report of the items donated to Global Operations in 2001 (2004 Handelman appraisal). On January 27, 2006, Mr. Handelman prepared an appraisal report as to the items in the 2002 John E. LeVan Form 8283 (2006 Handelman appraisal). At the conclusion of the examination respondent disallowed the deductions for the charitable contributions to Global Operations and USC.

On June 15, 2007, respondent sent petitioners a notice of deficiency for the 2001 and 2002 tax years. Petitioners filed a timely petition with this Court.

Discussion

## I. Charitable Contribution Deductions

Section 170(a)(1) allows as a deduction any charitable contribution verified under regulations prescribed by the Secretary. For any noncash contribution exceeding $5,000, the regulations require the donor to: (1) Obtain a qualified appraisal for the contributed property, (2) attach a fully completed appraisal summary (i.e., Form 8283) to the tax return on which the deduction is claimed, and (3) maintain records

pertaining to the claimed deduction in accordance with section 1.170A-13(b)(2)(ii), Income Tax Regs. Sec. 1.170A-13(c)(2), Income Tax Regs.

A qualified appraisal must include, among other things, a description of the property in sufficient detail for a person who is not generally familiar with the type of property to ascertain that the property appraised is the property that was contributed, a description of the property's physical condition, the valuation method used to determine the fair market value, and the specific basis for the valuation. See sec. 1.170A-13(c)(3)(ii), Income Tax Regs. A qualified appraisal must be made no earlier than 60 days before the date of the contribution and no later than the due date of the return, including extensions. Sec. 1.170A-13(c)(3)(i)(A), Income Tax Regs.

The appraisal summary must include, among other things, a description of the property in sufficient detail for a person who is not generally familiar with the type of property to ascertain that the property appraised is the property that was contributed, a brief summary of the property's physical condition, the manner of acquisition, and the cost or other basis of the property. See sec. 1.170A-13(c)(4)(ii), Income Tax Regs.

In addition to the substantiation requirements of section 1.170A-13, Income Tax Regs., a taxpayer must obtain a contemporaneous written acknowledgment from the donee

organization for any contribution of \$250 or more.  Sec.
170(f)(8)(A).  The contemporaneous written acknowledgment must
include a description of any property contributed, a statement as
to whether the donee provided any goods or services in exchange,
and a description and good faith estimate of the value of such
goods or services.  Sec. 170(f)(8)(B).

Petitioners attached to their returns Forms 8283 covering
the 2001 and 2002 charitable contributions, but they provided
respondent with appraisal reports and receipts only for the items
listed in the 2001 Shulman and 2002 John E. LeVan Forms 8283.  In
addition, those appraisal reports and receipts omitted
information required to substantiate petitioners' claimed
deduction, as discussed infra.

As to every item contributed, petitioners concede that they
have not strictly complied with section 1.170A-13, Income Tax
Regs.  However, petitioners contend that they are entitled to the
claimed charitable contribution deductions because they have
substantially complied with the regulation.

Under the substantial compliance doctrine, the critical
question is whether the requirements relate "'to the substance or
essence of the statute.'"  Bond v. Commissioner, 100 T.C. 32, 40-
41 (1993) (quoting Sperapani v. Commissioner, 42 T.C. 308, 331
(1964)); Taylor v. Commissioner, 67 T.C. 1071, 1077-1078 (1977).
If so, strict adherence to all statutory and regulatory

requirements is mandatory. See <u>Dunavant v. Commissioner</u>, 63 T.C. 316 (1974). However, if the requirements are procedural or directory in that they are not of the essence of the thing to be done but are given with a view to the orderly conduct of business, then they may be fulfilled by substantial compliance. See <u>id.</u> at 319-320; <u>Columbia Iron & Metal Co. v. Commissioner</u>, 61 T.C. 5 (1973); <u>Cary v. Commissioner</u>, 41 T.C. 214 (1963). We have previously held that the reporting requirements of section 1.170A-13, Income Tax Regs., are directory and require only substantial compliance. <u>Bond v. Commissioner</u>, <u>supra</u> at 41-42.

In <u>Bond</u>, the taxpayers donated two blimps to a charitable organization and in the same month obtained a professional appraisal of the blimps. Though the appraiser completed an appraisal summary for inclusion with the taxpayers' return, he did not provide a separate written report of the appraisal. Aside from the appraiser's qualifications, the appraisal summary did, however, contain all of the information required for a qualified appraisal. The taxpayers promptly provided those credentials to the Internal Revenue Service at audit. Because the taxpayers had furnished the Service with all the information required for a qualified appraisal, we held that they had substantially complied with the regulation despite the absence of a separate written appraisal report. <u>Id.</u> at 42.

Petitioners claim they have substantially complied because, as in Bond, the documents they have submitted contain the information required for a qualified appraisal and appraisal summary. We disagree.

Bond is inapplicable because petitioners did not merely fail to attach evidence of a qualified appraisal; they never obtained such an appraisal. See Hewitt v. Commissioner, 109 T.C. 258 (1997), affd. without published opinion 166 F.3d 332 (4th Cir. 1998); D'Arcangelo v. Commissioner, T.C. Memo. 1994-572.

Unlike the situation in Bond, petitioners' documents fail to provide an adequate description of or the condition of the donated items. The Forms 8283 and the appraisal reports provide very generic descriptions, stating the items were in "good working condition" or "operational, clean and in good saleable condition". An adequate description is necessary because "Without a more detailed description the appraiser's approach and methodology cannot be evaluated." O'Connor v. Commissioner, T.C. Memo. 2001-90.

In fact, petitioners' documents fail to even indicate the valuation method used or the basis for the appraised values. We have previously held such information to be essential because "Without any reasoned analysis, * * * [the appraiser's] report is useless." See Jacobson v. Commissioner, T.C. Memo. 1999-401.

Citing <u>Herman v. United States</u>, 73 F. Supp. 2d 912 (E.D. Tenn. 1999), petitioners contend that the comparable sales method is the only valuation method that could have possibly been used. Petitioners' argument is unpersuasive. Opinions of a U.S. District Court do not constitute binding precedent in this Court. Furthermore, nowhere in that opinion does the District Court state that the comparable sales method is the only valuation method possible. In fact, a careful reading of <u>Herman</u> should have led petitioners to the opposite conclusion: that the comparable sales method is not the only available method.

In <u>Herman</u>, the issue before the court was the valuation of medical equipment donated by the taxpayers. The taxpayers had purchased the equipment from a bankruptcy court, and the Government argued that the taxpayers' purchase price should be the fair market value of the equipment. The District Court did not reject the use of historical cost as a proper valuation method, but it held that the purchase price could not represent fair market value because the bankruptcy court was not a willing seller. Therefore, it is patently clear that the court considered another valuation method in addition to comparable sales.

Petitioners' interpretation of <u>Herman</u> also conflicts with the plain language of section 1.170A-13(c)(3)(ii)(J), Income Tax

Regs. That regulation explicitly approves of two other valuation methods: The income approach and the replacement-cost-less-depreciation approach.

Petitioners' position that the comparable sales method is the only method possible is also untenable because it would render the valuation method requirement of section 1.170A-13(c)(3)(ii)(J), Income Tax Regs., superfluous.

Petitioners also contend that the 2004 and 2006 Handelman appraisals can be used to supply the missing information because they validate the values reported on the Forms 8283. Although those appraisals were untimely, petitioners argue that an untimely appraisal can be used to supplement a timely-filed appraisal summary, as demonstrated in Bond v. Commissioner, 100 T.C. 32 (1993). Petitioners misstate the holding of Bond. In Bond, the submission of the information (i.e., the appraiser's credentials) required to prove that a qualified appraisal had been performed was untimely, but the performance of the appraisal itself was not. By contrast, in the instant case the 2004 and 2006 Handelman appraisals were performed years after the respective due dates of petitioners' returns. Therefore, petitioners cannot rely on those appraisal reports to cure the absence of the required information in a timely fashion.

Petitioners further failed to establish substantial compliance because they did not provide the manner of acquisition

of the items donated in 2002 and the cost or other adjusted basis in the items donated in either year.  Petitioners essentially argue that this information is unnecessary except in the bargain sale context.  Petitioners claim that in Fair v. Commissioner, T.C. Memo. 1993-377, "The Tax Court concluded that the cost basis information was not required to be included on the * * * [taxpayers'] return and was irrelevant to the calculation of the amount of the charitable deduction."

Petitioners take that discussion out of context, and our comment there regarding the necessity of cost basis information is inapplicable to the instant case.  We stated that the Fairs were not required to include their cost basis information on their return because the version of the regulation in effect for the year in issue did not, in fact, impose that requirement.  The Fairs made their donation on July 12, 1984.  At that time, taxpayers making noncash contributions exceeding $500 were required only to maintain written records of their cost basis information.  See T.D. 8002, 1985-1 C.B. 60, 62.  Taxpayers were not required to attach an appraisal summary to their return unless they made a noncash charitable contribution exceeding $5,000 after December 31, 1984.  See T.D. 8003, 1985-1 C.B. 64, 66.  Consequently, the Fairs did not have to include cost basis information on their return in order to be in strict compliance with the regulation.  By contrast, the version of the regulation

relevant to petitioners does require them to attach an appraisal summary to their return and to include cost basis information on that appraisal summary. See sec. 1.170A-13(c)(4)(ii)(E), Income Tax Regs.

On brief, petitioners contend that their failure to provide the manner of acquisition and cost basis information should be excused because they had reasonable cause for such failure. See sec. 1.170A-13(c)(4)(iv)(C)(1), Income Tax Regs. Petitioners claim that they disposed of the records containing that information while evacuating their house due to an approaching fire. Petitioners cite Fair v. Commissioner, supra, for the proposition that the inadvertent loss of cost basis records necessarily constitutes reasonable cause.

Petitioners misstate the holding of Fair. We held the taxpayers had reasonable cause because they failed to retain their cost basis records after being advised by a certified public accountant (in that case, a tax professional) that those records were not needed. We did not hold that inadvertent loss automatically establishes reasonable cause.

Assuming for the sake of argument that petitioners' reason for the missing cost basis records constitutes reasonable cause, petitioners' omission of that information is still not excused. If a taxpayer has reasonable cause, the regulations require an appropriate explanation to be attached to the appraisal summary.

Sec. 1.170A-13(c)(4)(iv)(C)(1), Income Tax Regs.  Petitioners did not submit any such explanation with their Forms 8283.

Furthermore, the appraisal of the item listed in the 2002 Jack LeVan Form 8283, in particular, was not a qualified appraisal because it was untimely.  That appraisal was performed on December 1, 2001, which was more than 60 days prior to the appraised item's donation on April 2, 2002.

In addition to their failure to substantially comply with the regulations, petitioners also failed to demonstrate that they obtained adequate written acknowledgments for their contributions as required by section 170(f)(8).  Petitioners argue that the Forms 8283 can also serve as written acknowledgments because they were signed by the donee.  However, neither the Forms 8283 nor the receipts from Global Operations contain a statement that no goods or services were provided by the donee in exchange, as required by section 170(f)(8)(B)(ii).  We have previously held that statement necessary for a charitable contribution deduction. See Kendrix v. Commissioner, T.C. Memo. 2006-9; Castleton v. Commissioner, T.C. Memo. 2005-58, affd. 188 Fed. Appx. 561 (9th Cir. 2006).

Petitioners argue that section 170(f)(8)(B)(ii) can be read to require the statement only when the donee actually furnishes goods or services to the donor.  We disagree.

"[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." Conn. Natl. Bank v. Germain, 503 U.S. 249, 253-254 (1992). In the absence of a clearly expressed legislative intent to the contrary, unambiguous statutory language ordinarily must be regarded as conclusive. Consumer Prod. Safety Comm. v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980).

Section 170(f)(8)(B)(ii) plainly states that the written acknowledgment is sufficient if it includes information as to "Whether the donee organization provided any goods or services in consideration, in whole or in part, for any property" donated by the taxpayer. The language used is clear and unconditional. There is no reason to read into section 170(f)(8)(B)(ii) the limitation suggested by petitioners.

Implying that Congress did not intend to require the statement in all circumstances, petitioners quote Addis v. Commissioner, 118 T.C. 528, 536 (2002), affd. 374 F.3d 881 (9th Cir. 2004):

> The legislative history accompanying the enactment of section 170(f)(8) states: "Organizations * * * [that provide goods or services in consideration for payments from donors] often do not inform their donors that all or a portion of the amount paid by the donor may not be deductible as a charitable contribution." H. Rept. 103-111, at 783, 785 (1993), 1993-3 C.B. 167, 359, 361. Congress enacted the substantiation requirements of section 170(f)(8) to require charitable organizations that receive quid pro quo contributions, i.e., payments made partly as a contribution and partly in consideration for goods or services provided to the

> donor by the donee organization, to inform their donors that the deduction under section 170 is limited to the amount by which the payment exceeds the value of goods or services provided by the charity. Id.

That quote does not support petitioners' position. In fact, the legislative history of section 170(f)(8) refutes petitioners' argument and specifically requires the statement regardless: "If the donee organization provided no goods or services to the taxpayer in consideration of the taxpayer's contribution, the written substantiation is required to include a statement to that effect." H. Conf. Rept. 103-213, at 565 n.30 (1993), 1993-3 C.B. 393, 443.

For these reasons, we hold that petitioners have failed to strictly or substantially comply with the requirements of section 1.170A-13, Income Tax Regs., and have failed to provide the contemporaneous written acknowledgments required by section 170(f)(8). Accordingly, petitioners are not entitled to the charitable contribution deductions claimed on their return, and we so hold.

## II. Section 6662(a) Penalties

Section 6662(a) imposes an accuracy-related penalty of 20 percent on the portion of an underpayment attributable to negligence, disregard of rules or regulations, or a substantial understatement of income tax. Negligence includes any failure to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs. "Disregard"

includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs.

Petitioners failed to properly substantiate their claimed charitable contribution deductions. That failure evidences negligence and careless disregard of the rules and regulations.

Petitioners contend that they should be excused from liability for the section 6662(a) penalties because they relied on the advice of their C.P.A.

Section 6664(c)(1) provides a defense to the section 6662 penalty for any portion of an underpayment where reasonable cause existed and the taxpayers acted in good faith. Reliance on the advice of a professional tax adviser may, but does not necessarily, demonstrate reasonable cause and good faith. Sec. 1.6664-4(b)(1), Income Tax Regs. A taxpayer claiming reliance on professional advice must show that: (1) The adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment. Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 99 (2000), affd. 299 F.3d 221 (3d Cir. 2002).

Petitioners have not established Mr. Spangler's qualifications as a tax expert. The mere fact that Mr. Spangler

is a C.P.A. does not necessarily make him a competent tax adviser. See Mediaworks, Inc. v. Commissioner, T.C. Memo. 2004-177.

Furthermore, the record indicates that petitioners withheld information from Mr. Spangler and that their reliance on his advice was therefore not in good faith. Petitioners claimed they were unable to provide purchase records for the donated equipment because they were forced to dispose of those records due to an approaching fire in 1996, but the record indicates that most of the items listed on the 2001 Shulman and 2002 John E. LeVan Forms 8283 were purchased after that purported fire. Petitioners purchased a total of 26 items of laboratory equipment on December 6, 2000, and August 12, 2001. Twenty-six of the 29 items listed in the 2001 Shulman Form 8283 are identical to the equipment petitioners purchased on those two dates. Similarly, 18 of the 19 items listed in the 2002 John E. LeVan Form 8283 are identical to equipment petitioners purchased on November 17, 2002. Since petitioners did not provide Mr. Spangler with all the information available to them, they failed to provide him with necessary and accurate information, and their reliance on his advice does not constitute reasonable cause.

Accordingly, we hold that petitioners are liable for section 6662(a) accuracy-related penalties.

We have considered all of the parties' contentions, arguments, requests, and statements.  To the extent not discussed herein, we conclude that they are irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.