T.C. Memo. 2018-159

UNITED STATES TAX COURT

BELAIR WOODS, LLC, EFFINGHAM MANAGERS, LLC, TAX MATTERS
PARTNER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19493-17.                    Filed September 20, 2018.

David M. Wooldridge, Ronald Levitt, Gregory P. Rhodes, and Michelle A.

Levin, for petitioner.

Christopher D. Bradley, David Delduco, and Jason P. Oppenheim, for

respondent.

MEMORANDUM OPINION

LAUBER, Judge: This case involves a charitable contribution deduction

claimed by Belair Woods, LLC (Belair), for a conservation easement. Currently

**[*2]** before the Court are cross-motions for partial summary judgment under Rule 121 as to whether Belair satisfied for this donation the substantiation requirements of section 1.170A-13(c), Income Tax Regs.[1]

The Internal Revenue Service (IRS or respondent) contends that the deduction must be denied in its entirety because Belair failed to attach to its 2009 tax return a fully completed "appraisal summary" on Form 8283, Noncash Charitable Contributions. In particular, Belair did not disclose on that form, as was required, the "cost or adjusted basis" of the property that was the subject of the contribution. Petitioner contends that Belair strictly or substantially complied with that requirement or, alternatively, had reasonable cause for failing to meet it.

We conclude that Belair did not comply, either strictly or substantially, with the requirements of the regulations. However, we find that disputes of material fact exist as to whether it had reasonable cause for its failure to supply a fully completed appraisal summary. We will accordingly grant respondent's motion for partial summary judgment in part and deny it in part, and deny in full petitioner's cross-motion.

---

[1]All statutory references are to the Internal Revenue Code (Code) in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

**[*3]** <u>Background</u>

There is no dispute as to the following facts, which are drawn from the parties' motion papers and the attached declarations and exhibits. Belair had its principal place of business in Georgia when its petition was filed.

A.    <u>The Easement</u>

Before August 2007 Augusta Woodlands, LLC (Augusta), owned a 1,490-acre tract of woodland (parent tract) in Effingham County, Georgia. Augusta was the wholly owned subsidiary of a large paper-products company. In 2007 a business downturn prompted Augusta to sell the parent tract. The sale occurred on August 1, 2007, at a price of $3,881,196, or about $2,605 per acre.[2]

The winning bidder was HRH Investments, LLC (HRH), a Georgia company owned by real estate developers. HRH regarded the property as attractive because it included seven miles of road frontage and abutted several properties that HRH's owners had previously developed. They intended to use the parent tract to expand on those adjacent developments, dividing it into smaller lots for sale to homebuilders. These development plans were abandoned as the 2008-2009 finan-

---

[2] The appraisal attached to Belair's 2009 return recites that the parent tract occupied 1,447 acres and was sold for $3,818,200. These figures differ from those set forth in the deed of sale. Any factual dispute on these points is not germane to disposition of the instant motions.

[*4] cial crisis engulfed the Nation, with particular severity on the housing market in the Southeastern States.

Belair was formed in late 2008 as a Georgia limited liability company and has operated at all times as a partnership for Federal income tax purposes. Belair's tax matters partner, Effingham Managers, LLC, is affiliated with HRH. On December 18, 2008, HRH contributed to Belair 145.15 acres (approximately 10%) of the parent tract. The transfer was accomplished in two parts. HRH transferred 77.90 acres directly to Belair, and it transferred 67.25 acres to Deercrest Estates, LLC, a wholly owned subsidiary of HRH, which retransferred the land to Belair.

On December 30, 2009, slightly more than one year later, Belair entered into a deed of conservation easement (Easement) with the Georgia Land Trust (GLT), a "qualified organization" for purposes of section 170(h)(3). The deed was recorded the next day. Belair delegated many details regarding this transaction to Forever Forests, LLC (Forever Forests), a consulting firm specializing in structuring conservation easements to maximize tax benefits for donors. Forever Forests advised Belair on the terms of the Easement, as well as its tax filings with respect thereto.

The Easement covers 141.15 of the 145.15 acres that HRH conveyed to Belair. The land excluded from the Easement consists of a pair of two-acre "home-

**[*5]** sites" designated for residential development.  The boundaries of each homesite are set forth in the Easement.

The Easement recites as its conservation values the preservation of "significant natural, scenic, aesthetic, watershed, agricultural, forest, open space and plant habitat[s]."  To that end article 3 of the Easement prohibits residential, commercial, and industrial use of the conserved land.  It also prohibits:  (1) placing any improvements (e.g., buildings, trailers, mobile homes, or other structures) on the property, (2) mining, (3) dumping garbage, and (4) engaging in any activity that would result in soil erosion or water pollution.

Belair reserved in article 4 of the Easement certain rights with respect to the conserved property.  Those rights include forest management activities (e.g., thinning the forest, applying herbicides, and setting controlled fires), agricultural activities, recreational activities (e.g., hunting, fishing, camping, trapping, hiking, and horseback riding), constructing and maintaining driveways to connect the homesites to public roads, and installing utility services to the homesites.

B.    Belair's Tax Return

Belair timely filed Form 1065, U.S. Return of Partnership Income, for its short taxable year beginning November 11 and ending December 31, 2009.  On

[*6] that return it claimed a charitable contribution deduction of $4,778,000 (or $33,707 per acre) for its donation of the easement.

Belair included with its return a copy of an appraisal that relied on the "before and after" method to value the easement. The appraisal concluded that the highest and best use of the 141.15 acres was a "142-site high-density residential development," which would supposedly make the land worth $5.08 million. The placement of the easement allegedly reduced that value to $302,000. The appraisal did not report Belair's cost basis in the land covered by the easement.

Belair included with its return a Form 8283 executed by the appraiser and GLT. Form 8283 directs the taxpayer to provide the IRS with certain information regarding noncash charitable contributions. When a taxpayer donates property (other than publicly traded securities) valued in excess of $5,000, the taxpayer must provide: (1) a description of the donated property, (2) a brief summary of its physical condition, (3) its appraised fair market value (FMV), (4) the date the property was acquired by the donor, (5) the manner of acquisition, and (6) the donor's "cost or adjusted basis." The instructions to the form state that "[i]f you have reasonable cause for not providing the information * * * attach an explanation so your deduction will not be automatically disallowed."

**[\*7]** Belair contacted Forever Forests about preparing the Form 8283, specifically with reference to reporting its "cost or adjusted basis." Forever Forests relayed advice that it had received in 2008 from Baker Donelson, a law firm. At Forever Forest's request, an attorney at that firm had reviewed the instructions to Form 8283 and concluded that "[i]t should not be necessary to include the basis information * * * if you attach an explanation to Form 8283 providing a reasonable cause for why it is not included." He further stated that "a reasonable cause for not including basis information should be that the basis of the property is not taken into consideration when computing the amount of the deduction."

In the relevant boxes on the Form 8283, Belair wrote "see attached" and appended a two-page letter. The letter stated that: (1) the donated property was a conservation easement, (2) the easement covered 141.15 acres of woodlands, (3) the easement had an appraised FMV of $4,778,000, and (4) the parcel covered by the easement was acquired on August 1, 2007, by "purchase/exchange." With respect to "cost or adjusted basis" the letter stated:

> A declaration of the taxpayer's basis in the property is not included in
> * * * the attached Form 8283 because of the fact that the basis of the
> property is not taken into consideration when computing the amount
> of the deduction. Furthermore, the taxpayer has a holding period in

**[\*8]** the property in excess of 12 months and the property further qualifies as "capital gain property."[3]

The IRS selected Belair's 2009 return for examination and sent petitioner an information document request. In December 2012 the IRS issued petitioner a summary report explaining that Belair's claimed deduction would be disallowed because it had not included on its Form 8283 information concerning its "cost or adjusted basis." About one month later Belair's certified public accountant (CPA) responded to the summary report and provided cost basis information concerning the easement.

On June 19, 2017, the IRS issued Belair a timely notice of final partnership administrative adjustment (FPAA) disallowing the claimed deduction because "the requirements of * * * section 170 have not been met." The FPAA alternatively determined that, if any deduction were allowable, Belair had not established the FMV of the easement. The FPAA determined a 40% "gross valuation misstatement" penalty under section 6662(a) and (h) and, in the alternative, a 20% accuracy-related penalty under section 6662(a). In September 2017 petitioner timely

---

[3]The final sentence evidently refers to section 170(e)(1)(A), which requires that the amount of any deduction be reduced by "the amount of gain which would not have been long-term capital gain" if the property had instead been sold.

**[*9]** petitioned this Court for readjustment of the partnership items under section 6226(a). We have jurisdiction under section 6226(f).

Discussion

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. See FPL Grp., Inc. & Subs. v. Commissioner, 116 T.C. 73, 74 (2001). We may grant partial summary judgment regarding an issue as to which there is no genuine dispute of material fact and a decision may be rendered as a matter of law. Rule 121(b); Elec. Arts, Inc. v. Commissioner, 118 T.C. 226, 238 (2002). The parties agree on all material facts relating to the issue of whether Belair strictly or substantially complied with the regulations. We conclude that this issue is appropriate for summary adjudication.

Section 170(a)(1) allows as a deduction any charitable contribution made within the taxable year. If the taxpayer makes a charitable contribution of property other than money, the amount of the contribution is generally equal to the FMV of the property at the time of the contribution. See sec. 1.170A-1(c)(1), Income Tax Regs.

Where a contribution of property (other than publicly traded securities) is valued in excess of $5,000, the taxpayer must "obtain[] a qualified appraisal of such property and attach[] to the return * * * such information regarding such

**[\*10]** property and such appraisal as the Secretary may require." Sec. 170(f)(11)(C). The required information includes "an appraisal summary" that must be attached "to the return on which such deduction is first claimed for such contribution." Deficit Reduction Act of 1984 (DEFRA), sec. 155(a)(1), Pub. L. No. 98-369, 98 Stat. at 691; see sec. 1.170A-13(c)(2), Income Tax Regs. The IRS has prescribed Form 8283 to be used as the "appraisal summary." Jorgenson v. Commissioner, T.C. Memo. 2000-38, 79 T.C.M. (CCH) 1444, 1450. Failure to comply with this requirement generally precludes a deduction. See sec. 170(a)(1) ("A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary.").

In his motion for partial summary judgment, respondent contends that Belair's claimed deduction should be disallowed because it declined to report its "cost or adjusted basis" on Form 8283 and thus failed to attach to its return a properly completed appraisal summary. Belair contends that it strictly (or at least substantially) complied with the applicable regulations. It alternatively contends that it had reasonable cause for any failure to comply.

**[*11]** A.     <u>Reporting Requirements</u>

     1.     <u>Strict Compliance</u>

The regulations require the donor to "[a]ttach a fully completed appraisal summary" to the tax return on which the charitable contribution deduction is first claimed. Sec. 1.170A-13(c)(2)(i)(B), Income Tax Regs. A fully completed appraisal summary must include the cost or adjusted basis of the donated property. <u>Id.</u> subpara. (4)(ii)(E). "If a taxpayer has reasonable cause for being unable to provide the information required * * * (relating to the manner of acquisition and basis of the contributed property), an appropriate explanation should be attached to the appraisal summary." <u>Id.</u> subdiv. (iv)(C)(<u>1</u>). "The taxpayer's deduction will not be disallowed simply because of the inability (for reasonable cause) to provide these items of information." <u>Ibid.</u>

We conclude that Belair did not strictly comply with the regulatory requirements. Belair did not report its cost basis as the regulation requires and as Form 8283 directs. And the explanation Belair attached to that form, far from showing that it was unable to provide this information, simply asserted that the information was not necessary. In effect, Belair asserted that taxpayers are free to ignore the

[*12] requirement that they report cost basis.  Asserting that one may ignore a

requirement does not constitute strict compliance with it.[4]

Petitioner contends Belair had reasonable cause for omitting basis infor-

mation because it did not know what basis to report.  On the facts here, petitioner

says, the term "basis" might refer to any of the following:  (1) the cost of the

parent tract, (2) the cost of the conserved portion of the parent tract, (3) the adjust-

ed basis of the conserved portion minus the homesite parcels, or (4) the basis of

the easement itself, which petitioner says is zero.  Because the term "basis" in the

context of a conservation easement is supposedly ambiguous, petitioner contends

that Belair had reasonable cause for not supplying basis information.

Even if petitioner's premise were correct,[5] its conclusion does not follow

from its premise.  The regulations excuse the omission of basis information only if

reasonable cause is established in the explanation attached to the appraisal sum-

---

[4]Petitioner contends that Belair strictly complied with section 155(a)(1) of
DEFRA, which (unlike the regulations) required only that basis be reported some-
where on the tax return.  See 98 Stat. at 691.  But the regulations require
disclosure on the Form 8283, and petitioner does not contend that these
regulations are invalid.  In any event Belair did not disclose anywhere else on its
2009 return its basis in the property subject to the easement.  See infra pp. 18-20.

[5]Petitioner errs in citing Cave Buttes, L.L.C. v. Commissioner, 147 T.C. 338
(2016), to support its contention that the instructions to Form 8283 are ambiguous.
That case did not address the basis reporting requirement and has no application to
the question presented here.

[*13] mary. See sec. 1.170A-13(c)(4)(iv)(C)(1), Income Tax Regs.; Friedman v. Commissioner, T.C. Memo. 2010-45, 99 T.C.M. (CCH) 1175, 1177. In its attachment to the appraisal summary, Belair did not offer the explanation it now advances. Nor did it disclose what its basis would be under the alternative approaches it mentions. Rather, it declined to disclose basis information of any sort on the theory that the IRS did not need this information.

Petitioner alternatively contends that Belair cured its initial omission by supplying cost basis information during the IRS audit. The regulations provide that a deduction will not be disallowed for failure to attach an appraisal summary if the donor complies with IRS instructions to submit that document within 90 days of an IRS request therefor. Sec. 1.170A-13(c)(4)(iv)(H), Income Tax Regs. (providing that a deduction will not be disallowed "[i]f such a request is made [by the IRS] and the donor complies with the request"). Petitioner asserts that this regulation entitles it to relief because its CPA provided basis information to the IRS in January 2013, shortly after being notified that Belair's deduction would be denied for failure to submit a properly completed Form 8283.

We are not persuaded. By its terms the regulation petitioner cites does not apply here. Belair did not "fail[] to attach to [its] return an appraisal summary." Ibid. Rather, Belair included in its return an intentionally incomplete Form 8283.

**[\*14]** And the IRS did not "request" that Belair cure the omission of which it was guilty. Ibid. Rather, the IRS informed Belair that its deduction would be denied, and Belair unilaterally supplied basis information in an effort to avoid that outcome.

Belair supplied the required information three years after its return was filed and only upon learning the outcome of the IRS examination. The regulations create a prophylactic rule designed to provide the IRS with information to help it decide whether to commence an examination. This requirement would be meaningless if a taxpayer could cure noncompliance after the examination was completed.

In sum, Belair did not provide cost basis information on its Form 8283, and its attached explanation did not show that it was unable to provide such information. Its appraisal summary therefore did not strictly comply with the regulations. See id. subdivs. (ii)(E), (iv)(C).

2.    Substantial Compliance

In Bond v. Commissioner, 100 T.C. 32, 41 (1993), we held that some of the reporting requirements set forth in section 1.170A-13, Income Tax Regs., while "helpful to respondent in the processing and auditing of returns on which charitable deductions are claimed," are "directory and not mandatory." Thus, in appropriate circumstances, these requirements can be satisfied by substantial, rather than

[*15] by literal, compliance.  Bond, 100 T.C. at 42.  "The doctrine of substantial compliance is designed to avoid hardship in cases where a taxpayer does all that is reasonably possible, but nonetheless fails to comply with the specific requirements of a provision."  Durden v. Commissioner, T.C. Memo. 2012-140, 103 T.C.M. (CCH) 1762, 1763.[6]

Substantial compliance may be shown where the taxpayer "provided most of the information required" or made omissions "solely through inadvertence."  Hewitt v. Commissioner, 109 T.C. 258, 265 n.10 (1997), aff'd without published opinion, 166 F.3d 332 (4th Cir. 1998).  But in order to substantially comply, the taxpayer must satisfy those reporting requirements that "relate 'to the substance or essence of the statute.'"  Bond, 100 T.C. at 41 (quoting Taylor v. Commissioner, 67 T.C. 1071, 1077 (1977)); see Estate of Evenchik v. Commissioner, T.C. Memo. 2013-34, 105 T.C.M. (CCH) 1231, 1234 (declining to excuse reporting errors that go to the "essential requirements of the governing statute" (quoting Estate of Clause v. Commissioner, 122 T.C. 115, 122 (2004))); Rothman v. Commissioner,

---

[6]As noted infra p. 22, Congress in 2004 added to the Code section 170(f)(11), which includes a statutory "reasonable cause" defense for failure to comply with the regulatory reporting requirements.  "The substantial compliance doctrine has continuing but limited application in a post-section 170(f)(11) world."  Rothman v. Commissioner, T.C. Memo. 2012-163, 103 T.C.M. (CCH) 1864, 1868.

[*16] T.C. Memo. 2012-163, 103 T.C.M. (CCH) 1864, 1868 (noting that omissions relating "to the substance or essence of the contribution" are "beyond the reach of the substantial compliance doctrine"). In assessing whether Belair substantially complied with the regulations in question here, we consider whether it provided sufficient information to enable the IRS "to evaluate the[] reported contributions, as intended by Congress." Smith v. Commissioner, T.C. Memo. 2007-368, 94 T.C.M. (CCH) 574, 586, aff'd, 364 F. App'x (9th Cir. 2009).

In enacting DEFRA's heightened reporting requirements, Congress aimed to give the IRS tools that would enable it to identify inflated charitable contribution deductions. See RERI Holdings I, LLC v. Commissioner, 149 T.C. __, __ (slip op. at 22-23) (July 3, 2017). Just before the enactment of DEFRA, the IRS had warned that taxpayers were using inflated appraisals to claim deductions that were several multiples of the amounts actually paid for donated property. See, e.g., Roscoe L. Egger, "Warning: Abusive Tax Shelters Can Be Hazardous," 68 A.B.A. J. 1674, 1676 (1982). The Senate Finance Committee took note of this fact, stating that, "in recent years, opportunities to offset income through inflated valuations of donated property have been increasingly exploited by tax shelter promoters." S. Prt. No. 98-169 (Vol.1), at 444 (1984). Citing "the subjective nature of valuation," the Committee expressed concern that "taxpayers may continue to play

[*17] the 'audit lottery' and claim excessive charitable deductions." Ibid. Congress intended that DEFRA's new substantiation regime would "alert the Commissioner to potential overvaluations of contributed property and thus deter taxpayers from claiming excessive deductions." RERI Holdings I, 149 T.C. at ___ (slip op. at 22).

The requirement to disclose "cost or adjusted basis," when that information is reasonably obtainable, is necessary to facilitate the Commissioner's efficient identification of overvalued property. The cost of property typically corresponds to its FMV at the time the taxpayer acquired it. See sec. 1012; Phillips Petroleum Co. v. Commissioner, 104 T.C. 256, 308 (1995) ("Actual sales are generally the best evidence of fair market value[.]"). When a taxpayer claims a charitable contribution deduction for recently purchased property, a wide gap between cost basis and claimed value raises a red flag suggesting that the return merits examination. Unless the taxpayer complies with the regulatory requirement that he disclose his cost basis and the date and manner of acquiring the property, the Commissioner will be deprived of an essential tool that Congress intended him to have.

For these reasons, we concluded in RERI Holdings I that the taxpayer did not substantially comply with the reporting requirements when it failed to disclose "cost or adjusted basis" on its Form 8283. 149 T.C. at __ (slip op. at 27). The

[*18] taxpayer there had claimed a deduction reflecting a value 11 times higher than its basis in the property it had purchased just 17 months earlier. We noted that this "significant disparity * * * , had it been disclosed, would have alerted respondent to a potential overvaluation." Id. at __ (slip op. at 26-27). Because the failure to supply cost basis information "prevented the appraisal summary from achieving its intended purpose," we held that this failure could not be excused on grounds of substantial compliance. Id. at __ (slip op. at 26).[7]

Here, Belair acquired the land in question by contribution from HRH, a related party. HRH had acquired the land in August 2007 for $2,605 per acre. In December 2009 Belair valued the easement at $33,707 per acre and the land covered by the easement at $35,990 per acre (viz., $5,080,000 ÷ 141.15). This valuation presupposed that the 141.15 acres had increased in value by 1,380% during the previous 2-1/2 years, amid the worst real estate crisis since the Great Depression. This is precisely the sort of information that Congress wished the IRS to

___

[7]Petitioner seeks to distinguish RERI Holdings I on the ground that it concerned valuation of a remainder interest rather than a conservation easement. We find this to be a distinction without a difference. When enacting DEFRA Congress expressed concern about "inflated valuations of donated property" generally. S. Prt. No. 98-169 (Vol.1), at 444 (1984). Form 8283 requires disclosure of cost basis information when any kind of charitable contribution property (other than publicly traded securities) is valued in excess of $5,000. We discern no logical or legal basis for applying a different analysis to different forms of property.

**[\*19]** have, and Belair's refusal to supply this information contravenes "the essential requirements of the governing statute." Estate of Evenchik, 105 T.C.M. (CCH) at 1234; see Bond, 100 T.C. at 41; see also sec. 1.170A-13(c)(4)(ii)(E), Income Tax Regs. (listing "cost or other basis" as a category of required information); Alli v. Commissioner, T.C. Memo. 2014-15, 107 T.C.M. (CCH) 1082, 1094 ("[C]ourts have routinely declined to apply the substantial compliance doctrine where \* \* \* entire categories of required information are omitted.").

Petitioner urges that this case differs from RERI Holdings I, asserting that Belair effectively disclosed its cost basis elsewhere on its 2009 tax return. Specifically, petitioner contends that Belair supplied information from which its cost basis could be derived in one or more of the following attachments to its Form 1065: (1) Schedule L, Balance Sheets per Books, (2) Schedule M-1, Reconciliation of Income (Loss) Per Books With Income (Loss) Per Return, (3) a section 743(b) election and calculation sheet, and (4) the attached appraisal, which included a history of the parent tract.

We are not persuaded. The regulations require that "an appraisal summary shall include" information concerning basis. Sec. 1.170A-13(c)(4)(ii)(E), Income Tax Regs. The explicit disclosure of basis on Form 8283 is essential in alerting the Commissioner as to whether (and to what extent) further investigation is need-

[*20] ed.  See Knight-Ridder Newspapers, Inc. v. United States, 743 F.2d 781, 796

(11th Cir. 1984) (refusing to excuse as harmless error a taxpayer's failure to make

an election on the designated IRS form because "[t]he Commissioner needs to

know that an election has been made in order to determine whether an audit is

necessary in the first place and what its scope should be").

The IRS reviews millions of returns each year for audit potential, and the

disclosure of cost basis on the Form 8283 itself is necessary to make this process

manageable.  Revenue agents cannot be required to sift through dozens or hun-

dreds of pages of complex returns looking for clues about what the taxpayer's cost

basis might be.  Cf. Durden, 103 T.C.M. (CCH) at 1764 ("Nothing in the statute

* * * requires respondent to look beyond the written acknowledgment when on its

face the acknowledgment fails to provide the information required to substantiate

a charitable contribution deduction.").  If cost basis is not explicitly disclosed

where it is required to be disclosed, the Commissioner will be handicapped in

identifying suspicious charitable deductions and deterring taxpayers from "con-

tinu[ing] to play the 'audit lottery.'"  S. Prt. No. 98-169 (Vol.1), at 444.

Finally, this is not a case where the taxpayer did "all that is reasonably pos-

sible," Durden, 103 T.C.M. (CCH) at 1763, or omitted information "solely through

inadvertence."  Hewitt, 109 T.C. at 265 n.10.  Belair contacted Forever Forests

**[\*21]** about preparing the Form 8283, specifically with reference to reporting its "cost or adjusted basis." Allegedly in reliance on the advice it received, Belair declined to report its cost or adjusted basis, asserting in an attachment to its Form 8283 that this information was unnecessary because "basis * * * is not taken into consideration when computing the amount of the deduction." This was not a case of inadvertent omission, but of a conscious election not to supply the required information. For all these reasons, we hold that Belair did not comply, either strictly or substantially, with the regulatory reporting requirements. See RERI Holdings I, 149 T.C. at __ (slip op. at 27).[8]

---

[8]Petitioner errs in citing Scheidelman v. Commissioner, 682 F.3d 189 (2d Cir. 2012), vacating and remanding T.C. Memo. 2010-151, in support of a contrary conclusion. The taxpayer there attached to his return two Forms 8283, which together contained all the information required by the regulations. See id. at 198. The Court of Appeals concluded that the fact that the required information was dispersed between two forms, "rather than gathered in a single form," was "the most technical of deficiencies" and was properly excused on grounds of substantial compliance. Id. at 199. Our opinion in Dunlap v. Commissioner, T.C. Memo. 2012-126, 103 T.C.M. (CCH) 1689, likewise affords little comfort to petitioner. We there sustained the disallowance of a charitable contribution deduction for a facade easement because the taxpayers failed to prove that the easement had a value greater than zero. Id. at 1702. We discussed the taxpayers' submission of incomplete Forms 8283 only in connection with the accuracy-related penalty determined by the IRS, i.e., in deciding whether the taxpayers "had reasonable cause" for their position and had "acted in good faith" within the meaning of section 6664(c)(1). See id. at 1705.

**[*22]** B.    <u>Reasonable Cause Defense</u>

In 2004, the year after the tax year involved in <u>RERI Holdings I</u>, Congress enacted the American Jobs Creation Act of 2004 (AJCA), Pub. L. No. 108-357, sec. 883(a), 118 Stat. at 1631.  The AJCA added to the Code section 170(f)(11), which included, in subparagraph (A)(ii)(II), a new statutory "reasonable cause" defense for failure to comply with the regulatory reporting requirements.  That subparagraph excuses failure to satisfy the reporting requirements discussed above if "it is shown that the failure to meet such requirements is due to reasonable cause and not to willful neglect."  This statutory "reasonable cause" defense is broader than the regulatory "reasonable cause" defense, which was promulgated previously.  As noted above, the latter defense is limited to situations where the taxpayer has reasonable cause "for being unable to provide the information required."  Sec. 1.170A-13(c)(4)(iv)(C)(1), Income Tax Regs.

The formulation of the section 170(f)(11)(A)(ii)(II) defense--referring to the existence of "reasonable cause" and the absence of "willful neglect"--resembles that appearing in numerous Code provisions that impose penalties or additions to tax.  <u>See, e.g.</u>, secs. 6039G(c)(2), 6704(c)(1), 6652(f)-(j), 6709(c).  "Code provisions generally are to be interpreted so congressional use of the same words indicates an intent to have the same meaning apply."  <u>Elec. Arts, Inc.</u>, 118 T.C. at 241.

**[\*23]** Thus, although the section 170(f)(11)(A)(ii)(II) "reasonable cause" defense relieves the taxpayer from disallowance of a deduction rather than from imposition of a penalty, we have construed these defenses similarly. See <u>Alli</u>,107 T.C.M. (CCH) at 1096; <u>Crimi v. Commissioner</u>, T.C. Memo. 2013-51, 105 T.C.M. (CCH) 1330, 1353.

"Reasonable cause requires that the taxpayer have exercised ordinary business care and prudence as to the challenged item." <u>Crimi</u>, 105 T.C.M. (CCH) at 1353 (citing <u>United States v. Boyle</u>, 469 U.S. 241 (1985)). "The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances." Sec. 1.6664-4(b)(1), Income Tax Regs.

If a taxpayer alleges reliance on the advice of a tax professional, that "advice must generally be from a competent and independent advisor unburdened with a conflict of interest and not from promoters of the investment." <u>Mortensen v. Commissioner</u>, 440 F.3d 375, 387 (6th Cir. 2006), <u>aff'g</u> T.C. Memo. 2004-279; <u>see Gustashaw v. Commissioner</u>, 696 F.3d 1124, 1139 (11th Cir. 2012). "Advice hardly qualifies as disinterested or objective if it comes from parties who actively promote or implement the transactions in question." <u>Stobie Creek Invs. LLC v. United States</u>, 608 F.3d 1366, 1382 (Fed. Cir. 2010). A taxpayer advancing a

**[\*24]** reliance-on-professional-advice defense must also show that it actually relied in good faith on the advice it received. See Alli, 107 T.C.M. (CCH) at 1096; see also Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 98-99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002). This determination "is inherently fact-intensive." Alli, 107 T.C.M. (CCH) at 1096 (quoting Crimi v. Commissioner, 105 T.C.M. (CCH) at 1353).

Petitioner contends that Belair, when preparing its Form 8283, reasonably relied on advice from Forever Forests, which in turn relied on advice from an outside law firm. We conclude that resolution of this issue will require us to address several questions as to which genuine disputes of material fact currently appear to exist. These questions include whether Forever Forests was a "tax professional"; whether Forever Forests was "a competent and independent advisor unburdened with a conflict of interest," see Mortensen, 440 F.3d at 387; whether Belair could reasonably rely on legal advice relayed to it indirectly; and whether Belair actually relied in good faith on advice that respondent seems to regard as too good to be true.

**[*25]** To reflect the foregoing,

<u>An order will be issued denying petitioner's motion for partial summary judgment and granting in part and denying in part respondent's motion for partial summary judgment.</u>